COMMONWEALTH vs. CLIFFORD GEORGE.

No. 92-P-732.

Suffolk. May 11, 1993. - November 30, 1993.

Present: ARMSTRONG, JACOBS, & GREENBERG, JJ.

*Search and Seizure*, Automobile, Container, Protective frisk. *Constitutional Law*, Search and seizure. *Controlled Substances*.

A warrantless search by police officers of a gym bag the defendant had removed from his automobile after his arrest for a traffic violation was a lawful search incident to arrest, where the defendant's evasive replies and sudden and unexpected handing of the bag to his campanion created an objectively reasonable concern on the part of the officers that the bag might contain a weapon; where the gym bag was within the defendant's reach when the officer grabbed it; where neither the defendant nor his companion was handcuffed; where the officers did not have their weapons drawn; and where the defendant's companion, who was standing only about three feet away from the defendant, started to open the bag, giving the two men greater access to its contents; consequently, after cocaine was discovered in the bag, the officers had probable cause to arrest the defendant and conduct a pat-down search which led to the seizure of crack cocaine from the defendant's pocket. [554-556]

INDICTMENT found and returned in the Superior Court Department on February 9, 1990.

A pretrial motion to suppress evidence was heard by *Charles R. Alberti*, J., and the case was tried before *Robert J. Mulligan*, J.

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

*Nijole Makaitis*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. While making a search after a traffic arrest, Officer Mark Parolin found several white rocks of "crack" cocaine, which, on analysis, weighed 242 grams. The

driver, the defendant George, was convicted by a jury of trafficking in more than two hundred grams of cocaine, G. L. c. 94C, § 32E(*b*)(4), and possession of ammunition without a firearm identification card, G. L. c. 269, § 10(*h*). The latter conviction was placed on file with the defendant's consent. The question presented is whether the police officer acted within the bounds of a reasonable search and seizure when he dipped into the gym bag removed from the automobile by the defendant.

These are the facts found by the judge of the Superior Court, who heard and denied the motion to suppress the incriminating evidence, supplemented by the transcript of the evidence. While on a special motorcycle patrol on Columbia Road in the Dorchester section of Boston, Officer Parolin clocked the defendant as travelling forty-five to fifty miles per hour in a thirty-mile per hour zone. He motioned for the defendant to pull over. At that point, the defendant pulled his late model black Ford Thunderbird automobile to a stop at the intersection of Columbia Road and Richfield Street. Seated in the passenger seat was his companion, James Gunn. Parolin's partner, Andre Williams, was busy writing out a citation to another speeder, so Parolin approached the driver's side of the Thunderbird alone.

The defendant handed over the automobile registration, which indicated that it was a rental car, but he was unable to produce a driver's license because, he said, he did not have it on his person or within the vehicle. The defendant explained that he had been stopped previously by two other police officers who had checked out the defendant's license and said "his license was good." The defendant then gave Parolin a nine-digit license number. Parolin called in to check on the defendant's license; the check precipitated a "no response" message. This meant to Parolin that either the defendant had a pending application for a license or was unlicensed. Parolin told the defendant that he had better think of a better number, which prompted the defendant to say that the license number was from New York. Parolin asked the defendant if New York used Social Security numbers as license numbers,

to which the defendant replied in the affirmative. Knowing that New York did not use Social Security numbers to identify its drivers, the officer became suspicious but feigned ignorance.

Next, Parolin returned to his motorcycle and began an outstanding warrant check on the defendant. Before he received his answer, Officer Williams finished writing out the other citation, and the two approached the car operated by George — Parolin on the driver's side and Williams on the passenger's side. Parolin told George he was under arrest for driving without a license. George stepped out of the car and stood approximately two to three feet away from Parolin. The passenger, Gunn, also got out of the car, and together with Williams, walked around the rear of the Thunderbird to the driver's side, to about three feet from where Parolin stood.

George protested that he lived "right across the street" at 32 Columbia Road, and asked if he could get his license. Parolin knew that 32 Columbia Road was actually about ten blocks from where the four men were standing. As it became apparent to George that he was not going to be permitted to drive away, he asked whether Gunn could obtain his license. Parolin said that Gunn could do whatever he pleased.

Suddenly, George reached behind the driver's seat of the car, and retrieved a zippered black canvas gym bag with red straps. He passed it immediately to Gunn.[1] Uncertain about what was in the bag, which earlier had not caught his eye, Parolin asked what was in the bag and then told Gunn to open it. George said to Gunn, "Go ahead, open the bag, it's only my jewelry."[2] Just as Gunn started to unzip the bag,

---

[1] The judge's findings imply that the bag was in the process of being passed from George to Gunn when Parolin grabbed it. We do not disturb this finding unless clearly erroneous. *Commonwealth* v. *Rose*, 25 Mass. App. Ct. 905, 906 (1987), and cases cited. A reading of the motion transcript, however, clearly indicates that Gunn had already received complete possession of the bag when the officer intercepted it.

[2] After the motion hearing, the judge suppressed this statement because the defendant had not yet been read his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

Parolin grabbed it because, as he explained in his testimony, "if there was a weapon, he [Gunn] could have just got in the bag and pulled it out." As he carried the bag by the straps to the rear of the car, Parolin hefted the bag. It felt heavy. He unzipped it and discovered inside plastic bags containing white rocks which he believed to be crack cocaine — later testing bore out that surmise — a heat sealer, a scale, and bullets. Both men were then placed under arrest, patted-down, handcuffed, and placed in the Thunderbird to await transportation to the police station. When the transport vehicle arrived, the men were patted-down again, and Parolin discovered what appeared to be a package of crack cocaine in the defendant's left pocket.

George's claim on appeal is that it was error for the motion judge to deny his motion to suppress evidence obtained as a result of a warrantless search and seizure. He does not contend that he was not under arrest at the time of the search or that the search was untimely. See *Commonwealth* v. *Turner*, 14 Mass. App. Ct. 1023, 1024 (1982), and cases cited. His argument is twofold: first, that the search and seizure cannot be justified as a protective search for weapons, see *Commonwealth* v. *Fraser*, 410 Mass. 541, 546 (1991); and, second, that the bag was not within his immediate control or his "grab area" at the time of the search, see *Chimel* v. *California*, 395 U.S. 752, 762-764 (1969).

In the circumstances, the judge did not err in denying the defendant's motion to suppress. The search was lawful under G. L. c. 276, § 1, as amended by St. 1974, c. 508, which provides in pertinent part that "[a] search conducted incident to an arrest may be made only for the purposes of seeking fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made . . . and removing any weapons that the arrestee might use to resist arrest or effect his escape." No argument was presented by the Commonwealth that the search of the gym bag was undertaken to secure evidence of the unlicensed operation of a motor vehicle. See *Commonwealth* v. *Toole*, 389 Mass. 159, 161-162 (1983). Rather, as the defendant contends, the ques-

tion is whether the search can be justified as one for weapons.[3]

Given the plenary power that the police have to arrest for traffic offenses, c. 276, § 1, requires us to be on guard for pretext searches not based on a genuine and reasonable concern about a concealed weapon or destruction of evidence. *Commonwealth* v. *Skea,* 18 Mass. App. Ct. 685, 701-702 n.19 (1984). Operating without a license is not an offense which ordinarily generates a reason to believe that weapons are present. Open to question are the officers' motives to search the gym bag. The defendant's evasive replies and sudden and unexpected movement of the bag, however, created an objectively reasonable concern on the part of the police that the bag might contain a weapon. Cf. *Commonwealth* v. *Lucido,* 18 Mass. App. Ct. 941, 942 (1984) (valid protective search for weapons occurred where the defendant's passengers, who had not been arrested, might retaliate against the arresting officer or assist the defendant in escape). Not until the defendant had lied to the police officers about his license and exaggerated the proximity of his apartment did he remove the gym bag, which was large enough to contain a weapon, from behind his driver's seat and hand it to his companion. Gunn, in turn, started to open the bag in front of the officers. See *Commonwealth* v. *Brillante,* 399 Mass. 152, 155-156 (1987) (where bag was big enough to contain a weapon, a valid search incident to an arrest occurred); *Commonwealth* v. *Madera,* 402 Mass. at 157. Compare *Commonwealth* v. *Johnson,* 413 Mass. 598, 602 n.5 (1992) (where the court intimated that, if the police discover a closed container which is not on the defendant's person and could not contain a weapon, then a search incident to arrest is invalid).

Having a genuine reason to fear that the bag contained weapons, the officers were justified in conducting a search in-

---

[3]That the evidence discovered is not evidence of the crime which justified the arrest does not make it inadmissible under G. L. c. 276, § 1. *Commonwealth* v. *Johnson,* 413 Mass. 598, 602 n.5 (1992). See also *Commonwealth* v. *Madera,* 402 Mass. 156, 159 (1988).

cident to arrest. Such a search "generally is limited for purposes of both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, to the body of the person arrested and the area and items within his or her immediate possession and control at the time." *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 (1991), and cases cited.

As to the defendant's contention that he had relinquished control of the gym bag, the situation before us provides greater justification to search the gym bag than those cases in which the suspects were standing immediately outside their vehicles at the time the vehicles were validly searched incident to a lawful arrest. See *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 351-352 (1983); *Commonwealth* v. *Brillante, supra.* Here, the gym bag was within the defendant's reach when the officer grabbed it; neither the defendant nor his companion was handcuffed, and the officers did not have their weapons drawn. Gunn, who was standing only about three feet away from the defendant, started to open the bag, which gave the two men greater access to its contents. Compare *Madera, supra* at 160 (risk of the defendant repossessing the bag in hands of police officers was minimal); *Commonwealth* v. *Cassidy*, 32 Mass. App. Ct. 160, 163 (1992) (search incident to arrest invalid where the defendant was handcuffed, and he and passenger were secured in police cruisers).

After Parolin discovered cocaine in the bag, the officers had probable cause to arrest the defendant on a controlled substance violation and conduct a pat-down search which led to the seizure of the crack cocaine from the defendant's pocket. *Commonwealth* v. *Johnson, supra* at 603. The motion to suppress the physical evidence was properly denied.

*Judgment affirmed.*