## COMMONWEALTH *vs.* VICTOR PACHECO.

No. 99-P-1254.

Bristol. March 9, 2001. - June 1, 2001.

Present: BROWN, KAPLAN, & RAPOZA, JJ.

*Practice, Criminal,* Findings by judge. *Constitutional Law,* Search and seizure. *Search and Seizure,* Automobile. *Identification.*

In the circumstances of a lawful stop of a motor vehicle for an expired inspection sticker, a State trooper's request for the defendant, a passenger in the vehicle, to produce identification, and his initial order to the defendant to step out of the vehicle, were proper [739-740]; however, the subsequent warrantless search of the passenger area of the vehicle was not justified as a search incident to arrest, and the evidence seized as a result of the search could not be classified as "fruits or instrumentalities" of the crime for which the defendant was arrested [740-743]: the defendant was entitled to suppression of the evidence.

COMPLAINTS received and sworn to in the Fall River Division of the District Court Department, one each on on January 9, 1997, August 12, 1997, and August 13, 1997; in the Taunton Division, one each on January 17, 1997, June 5, 1997, and August 12, 1997; and in the New Bedford Division, one each on May 16, 1997, and August 15, 1997, and two on September 16, 1997, respectively.

Upon consolidation in the Fall River Division, a pretrial motion to suppress evidence was heard by *Antone S. Aguiar, Jr.,* J.

An application for an interlocutory appeal was allowed by *Lynch,* J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him to the Appeals Court.

*David A. Jorge* for the defendant.

*Robert L. Goodale,* Assistant District Attorney, for the Commonwealth.

BROWN, J. This is an interlocutory appeal from an order of a District Court judge denying the defendant's motion to suppress

certain evidence. An expired inspection sticker prompted a police officer to stop a motor vehicle in which the defendant was the sole passenger; that event triggered a chain of events leading initially to the discovery of a counterfeit social security card in the name of one Taylor under a floor mat in the vehicle, and ultimately, pursuant to a warrant, the seizure of merchandise that had been obtained from several local department stores through the use of a fraudulent credit card in Taylor's name. We are constrained to reverse the order of the judge.

Although the judge's endorsement on the defendant's suppression motion purported to distinguish this court's opinion in *Commonwealth* v. *Alvarez*, 44 Mass. App. Ct. 531 (1998), he did not issue traditional written findings. As we noted in *Commonwealth* v. *Mattias*, 8 Mass. App. Ct. 786, 788 (1979), and in numerous cases since, "the absence of findings by the trial judge handicaps the process of review and [may] invite[] a remand for findings on the issues raised by the motion[]." In the present case, the judge who heard the suppression motion has retired. Accordingly, the parties have submitted a statement of agreed facts which a single justice of this court has approved and referred to the panel deciding the appeal.

We summarize the stipulated facts. On the afternoon of December 22, 1996, at about 4 P.M., the defendant was the sole passenger in a Toyota automobile owned by his father that one Randy Medeiros was driving eastbound on route 195 in Dartmouth. The vehicle passed Trooper Eric Swenson's location, and Swenson observed that it had an expired inspection sticker. Using his overhead lights, Swenson caused the vehicle to pull over into the breakdown lane and stop. The trooper, who was in uniform, approached the driver's side door and asked Medeiros to produce a license and the vehicle's registration. Medeiros produced a facially valid license and a registration which identified the owner of the vehicle as one Jose Pacheco. After briefly inspecting the documents, Trooper Swenson asked Medeiros who owned the vehicle. Medeiros responded by saying, "his father," referring to the defendant. Other than the fact that Medeiros was not the registered owner of the vehicle, there was nothing about the vehicle to suggest that it was stolen and

nothing about its occupants to suggest that individually, or together, a threat was posed to the safety of Trooper Swenson. Following the brief inquiry of Medeiros, Swenson went to the passenger side door and asked the defendant to produce identification. When the defendant responded that he was without identification, Trooper Swenson ordered him to get out of the vehicle and to step to the rear of the vehicle. There, he asked the defendant to provide his name, date of birth, social security number and other (unspecified) identifying information. The defendant provided the information requested and was permitted to return to his seat in the automobile. He was not pat-frisked.

Trooper Swenson returned to his cruiser and "ran" Medeiros's license, the vehicle registration, and the identifying information provided by the defendant. The information proved accurate, but it also revealed the existence of two outstanding default warrants against the defendant for misdemeanor offenses from the District Court. The vehicle registration was valid, as was the driver's license of Medeiros, and there had been no report that the vehicle had been stolen or taken without the authority of its owner. The trooper returned to the passenger side of the vehicle and requested the defendant to again step out of the vehicle. When he did so, Swenson placed the defendant under arrest on the outstanding default warrants, handcuffed him, and secured him in his police cruiser. Immediately thereafter, the trooper conducted a search of the front passenger area of the vehicle and discovered under the floor mat a social security card bearing the name Christopher Taylor. Swenson then returned Medeiros's license and the registration with a "warning" citation for the civil infraction. Medeiros was permitted to drive off with the Pacheco vehicle. The defendant was brought to the State police barracks in Dartmouth to be booked on the warrants and questioned with respect to the social security card.

Solely as a result of the discovery of the bogus social security card, Trooper Swenson commenced an investigation which revealed that the defendant had applied for and obtained a

fraudulent credit card in Taylor's name[1] and had purchased merchandise on credit from several area department stores in amounts in excess of $250.

Following the completion of the investigation, an arrest warrant was obtained for the defendant from the Fall River District Court on the complaints that are the subject of this prosecution, together with a search warrant for the defendant's apartment in New Bedford. On January 9, 1997, at 3:45 P.M., Trooper Swenson, in the company of a superior officer and a second trooper, all in uniform, went to the defendant's apartment with both warrants in their possession. Following the defendant's arrest on the warrant and while in custody, the defendant made inculpatory statements to the police with respect to his participation in the crimes charged in the several complaints pending against him.

We conclude that Trooper Swenson's request to produce identification and his initial order to the defendant to step out of the vehicle were proper in the circumstances, but that the subsequent warrantless search of the passenger area of the Toyota was not justified and that the evidence in question should have been suppressed.

The defendant does not contest the legality of the stop. The trooper had observed that the vehicle's inspection sticker had expired, which warranted the stop of the vehicle and the request for a license and registration from the operator. See *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 527-528 (1995); G. L. c. 90C, § 3. In these circumstances, "[t]he nature of the stop, i.e., for a traffic offense, defines the scope of the initial inquiry by a police officer," and "[i]t should pertain to operation of the motor vehicle[, viz.,] inquiry into the status of the driver as a licensed operator and the registration of the automobile." *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. 468, 470 (1996). If the driver produces a valid license and registration, there is ordinarily no reason for the officer to probe further and bring about interface with a passenger. This is attributable to the fact that "[a] passenger in the stopped vehicle may harbor a special concern about the officer's conduct because the pas-

---

[1]The police interviewed Taylor and apparently learned that he had worked with the defendant at the Acushnet Rubber Company.

senger usually had nothing to do with the operation, or condition, of the vehicle which drew the officer's attention in the first place." *Commonwealth* v. *Gonzalves*, 429 Mass. 658, 663 (1999).

Here, Medeiros produced a facially valid operator's license, but as to registration, the document produced contained the name of the registered owner (Jose Pacheco), which did not match that of the operator. At this point, Trooper Swenson had grounds for proceeding with his investigation by approaching the defendant on the passenger side. See *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 314 (1992); *Commonwealth* v. *Alvarez*, 44 Mass. App. Ct. at 534. Had the defendant tendered identification in the name of Pacheco, that might well have brought the inquiry to a close because it would have corroborated, at least on the surface, Medeiros's statement that the vehicle was owned by the defendant's father.

The defendant, however, could not produce identification. In the circumstances, Trooper Swenson's initial request to the defendant to leave the vehicle was an act in moderation tailored to deal with his need for information. "The . . . tender of a registration not crediting ownership of the vehicle to any occupant raised a question whether the car was stolen." *Commonwealth* v. *Riche*, 50 Mass. App. Ct. 830, 833-834 (2001). Furthermore, as noted in the *Riche* case, at 834, in somewhat different circumstances, "it is a not uncommon practice for the police to respond to a chance of trouble by separating those in a stopped car from each other to frustrate interchange or collaboration among them." Here, Trooper Swenson's arguable purpose would be to prevent Medeiros and the defendant from coordinating their stories as to the legitimacy of their presence in the vehicle.[2]

What followed next, however, was a different matter, and we are presented with the question whether there is a permissible range of inquiry that would permit the officer to go further. After handcuffing the defendant and securing him in the cruiser, Swenson returned to the vehicle and performed a search of the

---

[2]Trooper Swenson's testimony at the suppression hearing on this point, which is not a part of the stipulated evidence but is undisputed, was that he did not want Medeiros to hear the name the defendant gave.

area of the vehicle where the defendant had been seated, including the area underneath the floor mat. The stated purpose of the search was that because the defendant "had no identification whatsoever on him," he (Swenson) "wanted to verify who the individual was, [as] typically people will hide identification." We observe, however, that it is clear from the record that Swenson never performed a search of the defendant's person for possible identification after taking him into custody.

In any event, Swenson's rationale for the search glosses over the realities of the circumstances as they then existed. Using the name, date of birth, and social security number provided him by the defendant, the trooper, by radio dispatch, obtained information that the defendant's operator's license was under suspension and that default warrants were outstanding against him from the District Court for the offenses of shoplifting and trespassing, as well as assault and battery. By placing the defendant under arrest on the default warrants, which he was clearly entitled to do,[3] Swenson had evidently satisfied himself, given the confirmation of the information provided him by the defendant, that the individual named in the warrants was the defendant. Certainly, the defendant did not contest the fact that the warrants were his.

At the suppression hearing, and in this court, the Commonwealth maintains that the search for identification constituted a search incident to a lawful arrest. G. L. c. 276, § 1. "A search conducted incident to arrest may be made for the purpose of seizing fruits, instrumentalities, contraband, and other evidence of the crime for which the arrest had been made in order to prevent their destruction or concealment." *Commonwealth* v. *Elizondo*, 428 Mass. 322, 323 (1998). Certainly, no fruits of the arrest for the outstanding default warrants could be expected to be found in the Pacheco vehicle, nor does the Commonwealth raise the possibility of finding such "fruits." Nevertheless, the Commonwealth posits that identity is an ele-

---

[3]Trooper Swenson had obtained verbal confirmation of the existence of the warrants through his radio. See *Commonwealth* v. *Walker*, 370 Mass. 548, 560 (1976) (testimony by two officers that they had knowledge of two extant warrants for the defendant's arrest established the legality of the arrest; it was not necessary that they have the warrants in hand). See also *Commonwealth* v. *Walker*, 17 Mass. App. Ct. 182, 183 (1983).

ment of the offense for failure to appear in court (G. L. c. 276, § 82A),[4] and therefore constitutes the "fruits or instrumentalities" of the crime for which the defendant was arrested.[5]

The Commonwealth's claim at argument, unsupported by reference to any specific authority, that the grounds for the search were that Trooper Swenson's "state of certainty [as to identification] was not absolute" is, we conclude, untenable.[6] Questions as to identity are ultimately to be resolved by pretrial motions or in connection with particular proceedings in courts of law, such as arraignment, and not by questionable police actions at the scene of the arrest which trench upon an individual's right to be free from unreasonable and unjustified inquiries and intrusions. To lend substance to the Commonwealth's rationale for the need for absolute certainty of the identification of the person arrested would be to sanction a principle having no apparent stopping place and could risk the possibility of a general exploratory search for evidence of criminal activity.

All evidence seized, including evidence of the stolen goods seized from the defendant's apartment, that was traceable to Trooper Swenson's warrantless search of the passenger area of

---

[4]It is apparent that the defendant was not charged with a violation of G. L. c. 276, § 82A (failure to appear in court after release on bail or recognizance).

[5]The Commonwealth's brief on appeal expressly disavows any argument that the search of the passenger area of the vehicle was for weapons, a position required by the stipulated testimony, and recites that this is so "even though [the vehicle] remained occupied after the defendant had been secured in the rear of the officer's cruiser." In any event, the rationale for such searches diminishes once a defendant is handcuffed in a police cruiser, as here. See, e.g., *Commonwealth* v. *Cassidy*, 32 Mass. 160, 163 (1992). Though a search may be permissible under the Fourth Amendment to the Federal Constitution as interpreted by *United States* v. *Robinson*, 414 U.S. 218, 234-235 (1973), and *New York* v. *Belton*, 453 U.S. 454, 460 (1981), G. L. c. 276, § 1, is more restrictive. *Commonwealth* v. *Rose*, 25 Mass. App. Ct. 905, 905 (1987). Compare *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 351-352 & n. 18 (1983) (probable cause existed to search for contraband in a motor vehicle).

[6]In *Knowles* v. *Iowa*, 525 U.S. 113, 118-119 (1998), in somewhat differing circumstances, the Court rejected Iowa's purported justification for a full blown motor vehicle search after the driver had already been issued a citation for speeding. The asserted grounds for the search being, as in the case here, that a person subject to a routine traffic stop may attempt to hide or destroy evidence relating to his identity. The remedy in those circumstances, the Court held, was arrest of the driver if the officer was unsatisfied with the identification produced.

the vehicle after the defendant had already been arrested and secured in the cruiser, must be suppressed because the search cannot be justified as a search incident to arrest and the evidence seized cannot be classified as "fruits or instrumentalities" of the crime for which the defendant was arrested. Accordingly, the order denying the motion to suppress is vacated, and a new order is to enter allowing that motion.

*So ordered.*