## Commonwealth *vs.* Charles J. Blevines.

No. 00-P-912.

Plymouth. November 6, 2001. - February 28, 2002.

Present: Brown, Greenberg, & McHugh, JJ.

Further appellate review granted, 437 Mass. 1104 (2002).

*Practice, Criminal,* Motion to suppress. *Controlled Substances. Constitutional Law,* Search and seizure. *Search and Seizure,* Search incident to lawful arrest, Automobile.

The seizure and subsequent use by police of a criminal defendant's keys, which led directly to the discovery of cocaine in a vehicle to which the defendant had the keys, violated the defendant's rights under G. L. c. 276, § 1, and therefore, the judge at a pretrial hearing should have granted the defendant's motion to suppress the evidence of cocaine, where the keys were not an instrumentality of the crime of drinking in public for which the defendant was arrested or contraband, and where there was no evidence that the keys might have been used as a weapon against the police; further, even if the seizure of the keys was proper, the subsequent search was not warranted under the automobile exception to the warrant requirement, where there was no evidence that the defendant was ever seen in proximity to the vehicle or had control of it at any time, there was nothing to warrant the belief that evidence of criminal activity would be found in the vehicle, and cocaine could not be considered an instrumentality of the crime of public drinking. [93-96]
Cocaine seized from a vehicle to which the defendant in a criminal action had the keys did not fall within the plain view exception to the warrant requirement, where, if not for the improper seizure by the police of the defendant's keys and the subsequent use of those keys by the police, the police would not have been in a position to observe the cocaine; therefore, the judge at a pretrial hearing should have suppressed the seizure of the keys as not being incident to the defendant's arrest for drinking in public, and the cocaine as "fruit of the poisonous tree." [96-98]

Complaint received and sworn to in the Brockton Division of the District Court Department on September 10, 1999.

A pretrial motion to suppress evidence was heard by *James F.X. Dinneen*, J.

An application for leave to prosecute an interlocutory appeal

was allowed by *Ruth I. Abrams*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Nona E. Walker*, Committee for Public Counsel Services (*Cecely A. Reardon*, Committee for Public Counsel Services, with her) for the defendant.

*Christina L. Crowley*, Assistant District Attorney, for the Commonwealth.

BROWN, J. In this interlocutory appeal,[1] we review the propriety of an order of a District Court judge, following an evidentiary hearing, denying the defendant's motion to suppress physical evidence. The subject matter of the defendant's motion was a set of keys taken from his person after his arrest for public drinking (a violation of a city ordinance), and a plastic bag containing cocaine seized without warrant from a motor vehicle near where the defendant was arrested.[2] We conclude that the motion to suppress should have been allowed.

We summarize the factual findings of the motion judge. At about 11:15 P.M. on September 9, 1999, while on patrol in an unmarked vehicle in Brockton, three members of the Massachusetts State Police Gang Unit pulled into the rear parking lot of GiGi's Pub on Crescent Street. The troopers, who had made numerous arrests there for drug violations and disorderly conduct, saw two men talking near the rear entrance, one of whom, subsequently identified as the defendant, was drinking from a bottle of beer. As the troopers left their vehicle, the defendant placed the beer on the ground.

Trooper Brian Moore went over to the defendant, while Troopers Francis Walls and Jamie Calaso (or Collazo)[3] ap-

---

[1] The defendant sought and obtained leave from a single justice of the Supreme Judicial Court, pursuant to Mass.R.Crim.P. 15(a)(2), 422 Mass. 1501-1503 (1996), to pursue an interlocutory appeal. The single justice referred the matter to this court for review.

[2] The defendant's original motion sought suppression only of the cocaine. A supplemental motion was filed, seeking suppression of all evidence seized from the person of the defendant, including the keys. The motion also sought suppression of the defendant's statements to the police, which is not an issue in this appeal.

[3] Trooper Walls testified at the suppression hearing. Trooper Calaso did not testify.

proached the second man. Standing directly in front of the defendant, Moore asked him for his name and date of birth. The defendant gave the name "Charlie Jackson," and his date of birth as February 27, 1970. He also stated that he was thirty years old. Because the date of birth did not match the stated age (the defendant would have been twenty-nine), Moore, believing that the defendant had given him a false name or date of birth, informed the defendant he was under arrest for drinking in public. Before placing him in the unmarked cruiser, Moore pat frisked the defendant and recovered from his right rear pocket a set of five or six keys on a chain, some of which appeared to be car keys. (Apparently, the defendant did not have identification on him.) Moore placed the key ring on the roof of the vehicle. At some point, Moore attempted to run a warrant check using the name "Charlie Jackson," but there was no match. The trooper then went over to the second individual, one Shelby, and asked him what the defendant's name was. When Shelby responded "Benny Blevines," Moore asked the defendant whether his name was "Benny Blevines," and the defendant said no. A registry check of that name produced no match.

Trooper Moore then looked at the keys retrieved from the defendant and noticed that one was a "GM type key" which, Moore believed, belonged to a Chevrolet. Moore gave the keys to Trooper Calaso and told him to see if any of them fit a vehicle in the parking lot so they could "try to establish identification for [the defendant]."[4] There were three cars in the immediate area (perhaps seven vehicles in the lot as a whole), one of which was a Chevrolet Celebrity, that was parked about fifteen feet from where the two subjects were first observed. Calaso put the key in the trunk and it popped open; he immediately closed it. Trooper Moore asked the defendant if the vehicle was his, and the defendant replied that it belonged to his girlfriend. Prior to giving Calaso the keys, Moore asked the defendant how he had gotten to the pub, and the defendant stated that he had walked.

While Calaso was at the rear of the vehicle, Trooper Walls

---

[4]Although the judge made no specific mention of the testimony in his findings, Moore also testified that they were "*hoping* to find a registration in the car, a wallet with an ID for him in it" (emphasis supplied).

made an "area search" of the vehicle. Using a flashlight,[5] he peered through the front windshield of the vehicle from a position near the vehicle's inspection sticker, and observed a clear plastic bag containing what appeared to be rock cocaine partially underneath the front seat.[6] Walls asked Trooper Calaso to open the door of the Chevrolet with the key so that he (Walls) could retrieve the bag. The defendant was subsequently charged with possession of cocaine with intent to distribute, and doing so in a school zone. He was taken to the Brockton police station, where an officer recognized him as Charles Blevines. A computer check turned up outstanding warrants against the defendant.

Before the motion judge and on appeal, the defendant claims violations of the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276, § 1. He argues that while the patfrisk conducted by Trooper Moore was permissible as a search incident to arrest, the seizure and subsequent use of the keys, which led directly to the discovery of the cocaine, was not, and that once the police had determined that there was no weapon or contraband on the defendant's person, they should have gone no further; instead, they should have taken the defendant to the police station promptly for processing, especially given that the initial arrest was for a very minor offense. The subsequent actions of the police with respect to the Chevrolet, the defendant posits, were designed to uncover evidence of an unrelated crime.

The judge filed a memorandum of decision containing his factual findings and rulings. We make our own independent determination of the correctness of the judge's application of constitutional principles to the facts found. *Commonwealth v. Ocasio,* 434 Mass. 1, 4 (2001). Without citation to any authorities, the judge concluded that in arresting the defendant, the police had a "substantial issue of identity," and that it was "ap-

---

[5]The trooper's action in shining a flashlight into the vehicle did not constitute a search. *Commonwealth* v. *Doulette,* 414 Mass. 653, 654-655 (1993).

[6]It may be inferred from the judge's findings, and there was testimony to this effect from Trooper Moore, that the actions of Troopers Walls and Calaso were "pretty much" simultaneous.

propriate to gather whatever information was available at the scene to identify the defendant." Further, the judge found that "[t]here was a strong probability that if the defendant was connected to a particular automobile, that would provide some indication of his identity." Hence, the judge concluded, the police violated no right of the defendant when they confiscated his keys. Nor did they violate any of his rights, he reasoned, when they inserted the key into the lock of the Chevrolet in an attempt to learn if it fit a vehicle parked in the vicinity of the defendant.[7]

1. *Seizure and subsequent use of the keys.* The Commonwealth maintains that the search and subsequent use of the keys may be justified as a search incident to arrest. G. L. c. 276, § 1. The Commonwealth takes the position that "it was reasonable for the police to take the keys in order to prevent the defendant from using them as weapons against the officer," presumably conceding that the keys bore no relationship to the drinking charge, and were not contraband. The police made no claim that the keys might have been used as a weapon against them, or that they were apprehensive for their personal safety. Indeed, the judge did not rest his decision on these grounds.

As a general proposition, G. L. c. 276, § 1, is more restrictive than the Fourth Amendment, as expounded in *United States* v. *Robinson*, 414 U.S. 218, 234-235 (1973), and *New York* v. *Belton*, 453 U.S. 454, 460 (1981). See *Commonwealth* v. *Rose*, 25 Mass. App. Ct. 905, 905 (1987); *Commonwealth* v. *Pacheco*, 51 Mass. App. Ct. 736, 742 n.5 (2001). Compare *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 351-352 & n.18 (1983). A search under G. L. c. 276, § 1, is limited to seizure of the "fruits and instrumentalities" of the crime, as well as

---

[7]The opinion in *Commonwealth* v. *Alvarez*, 422 Mass. 198, 209 (1996), recites: "[f]or the purposes of this discussion we assume that a search occurred when the police inserted the key into [an apartment door] lock," but the court concluded that this action constituted only a minimal intrusion on the defendant's rights. In the present case, the intrusion was more than de minimus because the police lacked even reasonable suspicion to believe that there could be evidence of criminal activity in the vehicle when they inserted the key in the trunk.

contraband related to the crime, *Commonwealth* v. *Elizondo*, 428 Mass. 322, 323 (1998), and for the purpose of "removing any weapons that the arrestee might use to resist arrest or effect his escape." See *Commonwealth* v. *George*, 35 Mass. App. Ct. 551, 554-555 (1993).

Here, it is clear that the keys were not an instrumentality of the crime of drinking in public for which the defendant was arrested. See *Commonwealth* v. *Toole*, 389 Mass. 159, 161-162 (1983) (defendant arrested on outstanding warrant for assault and battery; gun found during search of truck tractor that defendant was driving inadmissible under G. L. c. 276, § 1). It is equally clear that the keys were not contraband. Further, the recitation in the Commonwealth's brief that the "motion judge's findings and rulings . . . were correct in holding that the search of the defendant's person was conducted incident to the defendant's arrest *to ensure the safety of the police*" (emphasis supplied), in a sense begs the question. The judge made no such finding, and there was no evidence at the suppression hearing to support such a conclusion. The troopers outnumbered the suspects, and engaged in brief conversation with them which was not accompanied by any threatening gestures on the part of the two men. Thus, once the valid patfrisk turned up nothing related to any crime, the picture changed.

The judge rested his denial of the defendant's suppression motion on the basis that the police needed to establish the defendant's identity. We cannot quarrel with the proposition that at the point when the police left the scene with the defendant under arrest for the cocaine, they may have had a legitimate question concerning his identity. Recently, however, in *Commonwealth* v. *Pacheco*, 51 Mass. App. Ct. at 742, in slightly differing circumstances,[8] we held that "[q]uestions as to identity are ultimately to be resolved by pretrial motions or in connection with particular proceedings in courts of law, such as ar-

---

[8] In the *Pacheco* case, the defendant was a passenger in a stopped vehicle, and could not produce documentary identification. Using the name, date of birth, and social security number provided him by the defendant, the police ascertained that the defendant had default warrants outstanding. We said that the officer, "[b]y placing the defendant under arrest on the default warrants, . . . , evidently satisfied himself, given the confirmation of the information provided him by the defendant, that the individual named in the warrants was

raignment, and not by questionable police actions at the scene of the arrest which trench upon an individual's right to be free from unreasonable and unjustified inquiries and intrusions."[9]

The Commonwealth argues in its brief that the troopers "had good reason to believe the defendant was concealing a crime due to his giving a false date of birth," and that from this consciousness of guilt, "they could reasonably infer that the revelation of the defendant's identity[10] would lead to evidence of a crime such as his fugitive from justice status due to outstanding criminal warrants."[11] The inference strikes us as not at all reasonable but altogether speculative — discovery of the defendant's identity would lead to evidence of what crime? Rather it is an inference conjured with the benefit of hindsight.

While we ascribe no particular motive to the troopers in this instance, there is a risk that a rationale of a search for identification could mask a general exploratory search for evidence of criminal activity. See *Commonwealth* v. *Pacheco*, 51 Mass. App. Ct. at 742.[12] We stress that the police have available other, less intrusive means, of ascertaining the identity of a person arrested. See, e.g., note 9, *supra*.

Although G. L. c. 276, § 1, is applicable to motor vehicle searches, see *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 49-53 (2000), in the last analysis, any search of the Chevrolet in

the defendant." *Commonwealth* v. *Pacheco*, 51 Mass. App. Ct. 736, 741 (2001).

[9]We are obliged to offer a slight emendation, that fingerprinting or questioning during the booking process are other methods of discovering an arrested person's identity, or, as occurred in the instant case, the defendant can be recognized by an officer at the police station where he is to be booked.

[10]We note that there was no evidence at the suppression hearing that Trooper Walls performed any search of the Chevrolet (such as examining the glove compartment) for purposes of obtaining evidence of identification; his only effort inside the vehicle was to remove the bag of cocaine.

[11]When the defendant was booked, it was determined that the defendant had criminal warrants outstanding against him. The defendant was unknown to the troopers at the scene.

[12]The Commonwealth cites *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 221 (1974), as a decision supporting its position. That case is inapposite. In *Navarro* the court upheld a search, as minimally intrusive, of a vehicle for the limited purpose of identifying it through the vehicle identification number. Here, the troopers' interest in the Chevrolet was not so much directed at learning who the registered owner of the Chevrolet was, but rather to the identity of the *defendant*.

these circumstances was problematic as a search incident to arrest. Even if the seizure of the keys was proper (although we do not so conclude), the Commonwealth had the burden to show that the subsequent search was justified under the automobile exception to the warrant requirement. *Commonwealth* v. *Santiago*, 410 Mass. 737, 744 (1991). Prior to Trooper Walls' observations through the front windshield, the police had no probable cause to believe that the vehicle contained contraband or evidence of crime, and there was no connection between the defendant's drinking in public and the vehicle, an "essential element to a finding of probable cause." *Commonwealth* v. *Toole*, 389 Mass. at 163. See *Commonwealth* v. *Moon*, 380 Mass. 751, 760 (1980) (no "nexus" between vehicle and criminal activity of defendant). See and compare *Commonwealth* v. *Scott*, 29 Mass. App. Ct. 1004, 1005 (1990) (police entered vehicle for limited purpose, to attempt to ascertain absent operator's identity; probable cause depended upon some nexus between vehicle and criminal activity under investigation). There was no evidence that the present defendant was ever seen in proximity to the vehicle, which was located fifteen feet from where the trooper and the defendant were standing, or had control of it at any time. *Ibid.* The defendant stated that he walked to the pub and that the vehicle belonged to his girlfriend. His possession of a key that may have fit a vehicle in the lot was a tenuous link, to say the least, but more important, as already observed, there was nothing to warrant the belief that evidence of criminal activity would be found in the vehicle.[13] Nor can it be reasonably maintained that the cocaine was an instrumentality of the crime of public drinking. See *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. at 50-51.

2. *Discovery of the cocaine.* We next address evidence that the cocaine was in plain view to Trooper Walls as he stood next to the windshield of the Chevrolet. The judge found that Walls "was standing where he had every right to be when he directed his flashlight into the interior of the defendant's car from the

---

[13]We further note that unless the trooper had reasonable suspicion that evidence of a crime would be located in the vehicle, he would have had no reason to open the trunk.

outside.[14] He observed contraband and this provided him with probable cause to enter the car and seize the cocaine."[15]

The defendant concedes the point that Walls observed the contraband and this provided him with probable cause to enter the car and seize the cocaine. He maintains, however, that the plain view exception is not applicable in the instant circumstances. "Merely being in a position to view an object does not always justify a plain view seizure." Grasso & McEvoy, Suppression Matters under Massachusetts Law § 13-1 (1999). See, e.g., *Commonwealth* v. *D'Amour*, 428 Mass. 725, 731 (1999) ("The police are lawfully in a position from which they view an object if they did not violate the Fourth Amendment to the United States Consitution [or art. 14 of the Massachusetts Declaration of Rights] in arriving there"). See also *Commonwealth* v. *Balicki*, 436 Mass. 1, 8-10 (2002). In the present case, we agree with the defendant that were it not for the seizure of the keys, and their subsequent use by Trooper Calaso, which we deem improper and in violation of the defendant's constitutional and statutory rights, Trooper Walls would not have been in a position to observe the cocaine.[16] Indeed, to put it differently, the observations were part of the entire fabric of an unconstitutional investigatory search using the keys. See, e.g., *Commonwealth* v. *Forde*, 367 Mass. 798, 809 (1975) (Hennessey, J. concurring).

What concerns us, as we observed in the *Pacheco* case, *Com-*

---

[14]As already mentioned, see note 5, *supra*, the trooper's actions in shining the flashlight into the parked vehicle did not constitute a search.

[15]As no question as to whether the defendant had an expectation of privacy in the vehicle was presented to the motion judge, we need not consider it. As the judge apparently treated the defendant as having an expectation of privacy in the vehicle, we do so as well. Parenthetically, we note that the record sheds little light as to whether the vehicle actually belonged to the defendant's girlfriend, as he claimed at the scene; the judge's findings suggest that it was the defendant's car. Assuming the vehicle was not the defendant's, he had automatic standing to contest the search of the vehicle because he was charged with an offense that had possession as an element, as the Commonwealth conceded at oral argument.

[16]The Commonwealth makes no argument that the police were entitled to seize the object in plain view because they were conducting an inventory search of the vehicle. The judge made no finding on the point, and there is nothing in the record to suggest that the vehicle was about to be towed. See *Commonwealth* v. *Fuller*, 30 Mass. App. Ct. 927, 927 (1991).

*monwealth* v. *Pacheco*, 51 Mass. App. Ct. at 742, is that to uphold a search for identification in the circumstances presented here would be to "sanction a principle having no apparent stopping place." The troopers apparently felt themselves at an impasse because they believed the defendant may have provided false information as to his identity, but they lacked probable cause to go further. A further troublesome possibility is that the troopers may have roamed from vehicle to vehicle in the parking lot looking for a match, engaging in essentially a random search rather than a search based on probable cause. In the circumstances, the judge should have suppressed the keys as not being incident to the defendant's arrest for drinking in public, and the cocaine as "fruit of the poisonous tree." *Commonwealth* v. *Ellsworth*, 41 Mass. App. Ct. 554, 557 (1996). The order denying the motion to suppress is vacated, and a new order is to enter allowing that motion.

*So ordered.*