## COMMONWEALTH *vs.* MICHAEL RINGUETTE.

No. 02-P-1608.

Middlesex. December 4, 2003. - January 20, 2004.

Present: GELINAS, BROWN, & COHEN, JJ.

Further appellate review granted, 441 Mass. 1106 (2004).

*Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions. *Practice, Criminal,* Admissions and confessions, Voluntariness of confession, Collateral estoppel. *Collateral Estoppel.*

There was ample support in the record and in the subsidiary findings of fact to support the ultimate findings of the judge hearing a motion to suppress evidence that the criminal defendant knowingly and voluntarily waived his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and that his statements made to different officers on the day of his arrest were voluntarily given, despite his possibly having been in the throes of post-cocaine ingestion effects at the time. [353-356]

The judge considering a criminal defendant's motion to suppress evidence brought with respect to one set of indictments correctly concluded that principles of collateral estoppel required denial of the motion, where the defendant had previously filed an identical motion with respect to a different set of indictments, where the defendant had had a full and fair opportunity to litigate the identical issues in the first motion, and where the decision and order in the first motion was subject to appeal and constituted a final judgment. [356-361]

INDICTMENTS found and returned in the Superior Court Department, three on March 3, 1999, and four on January 19, 2000, respectively.

A pretrial motion to suppress evidence was heard by *James F. McHugh,* J.; a second pretrial motion to suppress evidence was considered by *Timothy S. Hillman,* J.; and the cases were heard by *S. Jane Haggerty,* J.

*Thomas J. Iovieno* for the defendant.

*Alexandra T. Camp,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant, Michael Ringuette, appeals from

convictions of unarmed robbery, larceny under $250, robbery of a victim sixty years or older, assault with intent to rob, assault and battery, and fraudulent use of a credit card.[1] The indictments stemmed from incidents occurring on January 8, January 13, and January 14, 1999, when the defendant engaged in a series of purse snatchings, some while on foot and some while a passenger in a green Ford Escort automobile. Apprehended on the morning of January 14, 1999, a short time after the incident of that day, the defendant, while in police custody, made statements to officers from several police departments, implicating himself in all of the incidents.

On appeal, the defendant challenges the denial of his motion to suppress, filed with respect to the incidents occurring on January 13 and January 14, 1999 (first motion), and the ruling, by a different Superior Court judge, that the defendant was collaterally estopped from pursuing a motion to suppress with respect to the incidents occurring on January 8, 1999 (second motion). We affirm the convictions.

We place the issues on appeal in the context of the events leading to the indictments. At approximately 4:00 P.M. on January 8, 1999, the first victim, having completed her shopping at a grocery store in the Treble Cove Plaza in Billerica, wheeled her grocery cart to her car in the parking lot. While at her car, she observed a teal green car pull up to her grocery cart. The window of the car rolled down, and an arm reached out and grabbed her purse from the cart. The victim went to the window of that car and tried to wrestle the purse away from the person inside the vehicle. After a struggle, she retrieved the purse, and the vehicle drove away from the scene. The victim reported the incident to the police department when she arrived at home.

A Chelmsford police officer responded to a second incident at about 4:25 P.M. on the same day. The second victim, an elderly woman, reported that while at the Eastgate Shopping Plaza in Chelmsford, she was attempting to get into her car when someone approached her from behind, knocked her down, and took her purse. She observed the person enter a green car, which

---

[1]The defendant was found not guilty on two counts of assault and battery by means of a dangerous weapon at the jury-waived trial; one count of receiving stolen goods and one count of being a disorderly person were dismissed.

sped away from the scene. The next day, the defendant bought a carton of cigarettes in Chelmsford, using the second victim's credit card.

At about 8:30 P.M. on January 13, 1999, Tewksbury police officers responded to an incident at a supermarket in that town. A third victim reported that her pocketbook had been stolen by someone driving a green car. This victim saw the defendant and provided a description of the car and the car's license plate number. The vehicle was registered in New Hampshire to the defendant's wife. From a photo array, the victim identified the defendant as the man who had stolen her purse.

A Dracut police officer responded to a January 13, 1999, incident at a supermarket in Dracut. A fourth victim reported that her purse had been stolen that evening in the supermarket parking lot. Acting on information, the officer recovered the contents of the pocketbook in Lowell from a person not the defendant. The next day, on January 14, 1999, the fourth victim identified the defendant as the person who had stolen her pocketbook.

At about 8:20 A.M. on January 14, 1999, Lowell police officers responded to an incident in a supermarket parking lot in Lowell. A fifth victim walked to the back of her car, where she was struck on the right hip by a car. Someone in the vehicle grabbed for her pocketbook, took it from her shoulder, and drove away from the scene. The victim was able to see the license plate of the vehicle and the person who grabbed her pocketbook. She subsequently identified the car as the one that struck her, and the defendant as the person driving the car. Later that day, the defendant and another were arrested while in the vehicle. The fifth victim's purse was recovered from the car.

*The first motion to suppress.* The defendant challenges the denial of his first motion to suppress, heard in connection with indictments handed up as a result of the incidents of January 13 and 14, 1999. He argues that because he was suffering from severe cocaine addiction and withdrawal, he could not knowingly and voluntarily have waived his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), nor could his statements, made to different officers on the day of arrest, have been voluntarily given. See *Commonwealth* v. *Tavares*, 385 Mass. 140, cert.

denied, 457 U.S. 1137 (1982). In support of his argument, the defendant points to the judge's findings that, at the time of his arrest, he was highly addicted to "crack" cocaine, spending about $600 per day to support his habit. He last had used crack cocaine at about 9:00 A.M. on the morning of his arrest, ingesting two twenty-dollar bags. During the days preceding his arrest, the defendant had slept and eaten little. The defendant also points to the judge's findings that at the time of the interviews with the police officers, he may have been in the throes of post-cocaine ingestion effects, a finding supported by evidence that during the interviews he was nervous and shaking, and his eyes were dilated.

Absent clear error, we accept the motion judge's subsidiary findings of fact, *Commonwealth* v. *Maynard*, 436 Mass. 558, 569 (2002). However, ultimate findings and conclusions of law, particularly those of constitutional dimensions, are open for our independent review. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 667 (1975), cert. denied, 425 U.S. 959 (1976).

While there is no per se rule excluding as involuntary statements made during drug withdrawal, we recognize that the prosecution bears a "heavy burden" to show that the defendant's waiver of his Miranda rights, and his subsequent confession, were voluntary. *Commonwealth* v. *Paszko*, 391 Mass. 164, 175-176 (1984) (citations omitted). Here, our consideration of "the totality of relevant circumstances," *Commonwealth* v. *Mahnke*, 368 Mass. at 680, as set out in the detailed and comprehensive findings of the motion judge, leads us to conclude that the defendant's statements were properly admitted.

The motion judge found that during the interview, the defendant appeared to the officers to be sober, coherent, responsive, and in control of his faculties. He responded appropriately to general questions about his background and openly discussed his addiction to crack cocaine. He spoke of his involvement in the purse snatchings and provided details of the crimes. The defendant also provided details of the participation of his friend, William Twining, in the commission of the offenses. After the defendant's statement had been reduced to writing, he read the statement, and then, after a conversation with the officers as to whether Twining had confessed to the

crimes, and upon being told that Twining had not confessed, the defendant asked that Twining's name be removed from the statement, as the defendant did not want to "rat out" Twining and be known as a "snitch" when he, the defendant, went to prison. The statement was redrafted, removing all reference to Twining's involvement, and after reading the second statement, the defendant signed both pages.

The judge also found that the defendant subsequently was interviewed by other police officers concerning different offenses, that he was again given his Miranda warnings, and again signed a waiver form indicating that he had been advised of and understood his rights. The defendant then provided details of these additional incidents. At this time the defendant appeared coherent, sober, and responsive. The judge found that the defendant was not restrained by the officers during either interview.

Based upon all of the evidence, the judge found that the defendant was nervous but not intoxicated, had no difficulty in standing or sitting upright, and had no difficulty speaking clearly. His cognitive faculties were intact and he understood the contents of the Miranda form. The judge also found that, at the time he signed the second Miranda form prior to the second interrogation, the defendant was sober, not slurring his speech, and not having difficulty responding appropriately and intelligently to questions. Finally, the judge found that neither at the time of his arrest nor at the time he gave statements to the police was the defendant under the influence of crack cocaine, and that, at most, he was suffering from postingestion effects. The defendant was able to walk and operate a motor vehicle without difficulty, distinguish between matters that were important and unimportant, and form rational judgments that were unaffected by the effects of drugs. In his findings, the judge noted that, as part of the first interrogation, the defendant described the two purse snatchings in which he said he participated the previous week, one in Billerica and one in Chelmsford, corresponding to the events occurring on January 8, 1999. The judge concluded that, beyond a reasonable doubt, the defendant knowingly and voluntarily waived his rights under *Miranda* and voluntarily spoke with the police officers, and that

his statements were the product of a free and rational decision on his part. Our review of the record and of the judge's subsidiary findings reveals ample support for the judge's ultimate findings of fact. We also conclude that there was no error in his rulings of law and his application of the law to the facts found.

*Collateral estoppel.* The defendant also claims error in a second judge's ruling that principles of collateral estoppel required denial of his motion to suppress, brought with respect to the set of indictments numbered 00-57, for crimes committed on January 8, 1999. As noted, the defendant answered to two sets of indictments. The first of these, numbered 99-278, was returned on March 3, 1999, and charged the criminal behavior occurring on January 13 and 14, 1999; the second, numbered 00-57, was returned on January 19, 2000, and charged the criminal behavior occurring on January 8, 1999.

Prior to being charged with the January 8 offenses, the defendant filed a motion to suppress with respect to the set of indictments numbered 99-278. This motion was heard on August 24, 1999, and denied on September 1, 1999, and is the subject of our review and affirmance, *supra.* After the set of indictments numbered 00-57 was returned, the defendant filed an identical motion to suppress in that case, on March 2, 2000. The motion was denied, by a different judge, without hearing, on April 20, 2000. Although the first motion to suppress was heard and decided prior to the defendant's being indicted on the January 8 offenses, the second judge ruled that the motions were identical, that the defendant had a full and fair opportunity to litigate the identical issues in the first motion, that the decision and order in the first motion was subject to appeal and constituted a final judgment, and that the defendant was therefore estopped from litigating the issue a second time. We agree.

"Principles of issue preclusion derive from the common law with roots in civil proceedings. The principles have application to criminal cases, and they 'preclude[ ] relitigation of issues determined in prior actions between the parties.' 'Issues precluded under this doctrine must have been actually litigated in the first action . . . [and] there must have been available

some avenue for review of the prior ruling on the issue.' Finally, issue preclusion usually applies only 'where there is mutuality of the parties' . . . ." *Commonwealth* v. *Williams*, 431 Mass. 71, 74 (2000). (Citations omitted). See *Commonwealth* v. *Scala*, 380 Mass. 500, 503 (1980). The case of *United States* v. *Levasseur*, 699 F. Supp. 965, 981 (D. Mass.), rev'd on other grounds, 846 F.2d 786, cert. denied, 488 U.S. 894 (1988), enumerates five requirements that must be met in order for collateral estoppel to apply: (1) the issues in the two proceedings must be the same; (2) the defendant must have had sufficient incentive to have vigorously and thoroughly litigated the issue in the previous proceeding; (3) the defendant estopped must have been a party to the previous litigation; (4) the applicable law must be identical in both proceedings; and (5) the first proceeding must have resulted in a final judgment on the merits such that the defendant was provided with sufficient incentive and an opportunity to appeal.

The defendant concedes, and we agree, that the first four factors are extant in this case.[2] Nevertheless, the defendant argues that principles of collateral estoppel should not apply in this case because the ruling in the first motion did not result in a final judgment on the merits in that the interlocutory appeal procedure established in Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), does not provide an adequate opportunity for review, and that offensive use of the doctrine of collateral estoppel (more specifically, issue preclusion) would result in unfairness. The defendant also argues that issue preclusion should not apply because the judge's ruling on the first motion to suppress was not a final judgment, and he had no meaningful way to appeal that ruling. He contends that "[a] final judgment on the merits should require a more meaningful and automatic right of appeal than [is] provided in practice to a defendant by [Mass.R.Crim.P.] 15," as defendants, unlike the Commonwealth, do not enjoy an absolute right of appeal in these circumstances. We think the argument misplaced.

We first note that, while *Commonwealth* v. *Williams*, *supra* at 76, recognizes that the appellate courts will rarely deny a hear-

---

[2] The defendant's brief conceded factors two, three, and four. The defendant conceded the first factor at oral argument.

ing of the Commonwealth's appeal from the allowance of a motion to suppress because to do so might result in the irretrievable loss of the right to present legal evidence, the Commonwealth's right of appeal is not absolute, but depends on a showing that the error complained of is irremedial, see *Beckman* v. *Commonwealth*, 377 Mass. 810, 812 (1979). The Commonwealth and the defendant have an equal right to apply for interlocutory review under the rule.[3,4]

We are mindful that, prior to the adoption of rule 15, the possibility of review of interlocutory decisions under G. L. c. 211, § 3, according to the "exceptional circumstances" standard of *Gilday* v. *Commonwealth*, 360 Mass. 170, 171 (1971), was not a right of appeal for purposes of collateral estoppel. *Commonwealth* v. *Scala*, 380 Mass. at 507 n.8. With the enactment of G. L. c. 278, § 28E, as amended by St. 1979, c. 344, § 45, the Commonwealth and defendants gained the right to seek interlocutory review of the determination of motions to suppress heard in Superior Court.[5] The right to seek such review with respect to the denial of such motions is also incorporated in rule

---

[3]The rule provides: "A defendant or the Commonwealth shall have the right and opportunity to apply to a single justice of the Supreme Judicial Court for leave to appeal an order determining a motion to suppress evidence prior to trial." Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). If the single justice determines that the administration of justice would be facilitated, the justice may grant that leave and hear the appeal or may report it to the full Supreme Judicial Court or to the Appeals Court. *Ibid.*

[4]This case is unlike that of *Commonwealth* v. *Allain*, 36 Mass. App. Ct. 595, 598-599 (1994), where we held that a ruling on a motion to suppress, heard in the course of a District Court hearing on probable cause, had no preclusive effect on subsequent proceedings in Superior Court; by statute and by rule, there is no appeal whatsoever from any proceeding held in connection with a probable cause hearing in District Court. See Mass.R.Crim.P. 15(a)(4), as appearing in 422 Mass. 1502 (1996).

[5]General Laws c. 278, § 28E, as amended by St. 1979, c. 344, § 45, provides in relevant part:

"An application for an appeal from a decision, order or judgment of the superior court determining a motion to suppress evidence prior to trial may be filed in the supreme judicial court by a defendant or by and on behalf of the commonwealth by the attorney general or a district attorney. If such application is denied, or if such application is granted but the interlocutory appeal is heard by a single justice, the determination of the motion to suppress evidence shall be open to review by the full court after trial in the same manner and to the same extent as

15. While our courts discourage the use of interlocutory appeals generally, see *Commonwealth* v. *Lewin (No. 3)*, 408 Mass. 147, 150 (1990), interlocutory appeals with respect to motions to suppress, although subject to a determination by a single justice of the Supreme Judicial Court that the administration of justice would be facilitated,[6] provide plenary review of the trial court's actions. See, e.g., *Commonwealth* v. *Dunigan*, 384 Mass. 1, 3-4 (1981); *Commonwealth* v. *Kuszewski*, 385 Mass. 802, 802-804 (1982); *Villalta* v. *Commonwealth*, 428 Mass. 429, 431-432 (1998); *Commonwealth* v. *Blevines*, 54 Mass. App. Ct. 89, 90 & n.1 (2002), *S.C.*, 438 Mass. 604 (2003).

We note as well that the defendant did not avail himself of his right to seek interlocutory review from the rulings on either motion to suppress. While not the rule in our State, in some jurisdictions where interlocutory appeal is permitted, "it is quite proper to view the failure to appeal as rendering the pretrial order 'a final determination and res judicata.' " *Commonwealth* v. *Williams*, 431 Mass. at 75, quoting from 5 LaFave, Search and Seizure § 11.2(f), at 92 (3d ed. 1996). We need not consider whether such a rule should be adopted in this instance, as we determine that the right to seek interlocutory review was sufficient to cloak the judge's order with finality sufficient to permit its preclusive use; the exercise or nonexercise of the right need not be a determining factor.

The opportunity for plenary review provided by G. L. c. 278, § 28E, and Mass.R.Crim.P. 15(a)(2) was more than adequate to provide "some avenue for review of the prior ruling on the issue." *Commonwealth* v. *Williams, supra* at 74, quoting from *Sena* v. *Commonwealth*, 417 Mass. 250, 260 (1994). The ruling of the judge denying the first motion to suppress was a final judgment, as that term has been used in determining whether it

determinations of such motions not appealed under the interlocutory procedure herein authorized."

By G. L. c. 218, § 27A(*g*), the rule is applicable to jury cases heard in District Court.

[6]The defendant is afforded this procedure because in some circumstances, interlocutory appeal will conserve judicial resources and spare all parties the ordeal of a trial that would ultimately prove futile. See Reporters' Notes to Mass.R.Crim.P. 15, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1358-1359 (LexisNexis 2003).

should be given preclusive effect. See *United States ex rel. Di-Giangiemo* v. *Regan*, 528 F.2d 1262, 1265 (2d Cir. 1975), cert. denied sub nom. *DiGiangiemo* v. *Olgiatti*, 426 U.S. 950 (1976) (final judgment includes prior adjudication of issue in another action where parties were fully heard, court supported its decision with reasoned opinion, and decision was subject to appeal). Given our determination here, we need not consider whether the defendant's right of appeal subsequent to conviction, preserved on the motions as well as with respect to issues of error in the trial, was an avenue of appeal sufficient to satisfy the requirement of finality.

The defendant finally argues, on authority of *Whitehall Co., Ltd.* v. *Barletta*, 404 Mass. 497, 501 (1989) (fairness is decisive consideration in use of offensive collateral estoppel); *Bar Counsel* v. *Board of Bar Overseers*, 420 Mass. 6, 9 (1995) (same); and *Commonwealth* v. *Two Parcels of Land*, 48 Mass. App. Ct. 693, 698 (2000) (same), that collateral estoppel here should not prevail, as its invocation would be unfair to the defendant, and offensive use of collateral estoppel is disfavored when its application would be unfair. On this score, we agree with the ruling of the judge who heard the second motion. There is no dispute that the defendant vigorously litigated the issue at the hearing on the first motion; that he had a full and fair hearing on the exact facts, law, and issues involved in the new charges; that the charges in each of the indictments were equally severe, see *United States* v. *Levasseur*, 699 F. Supp. at 980 (collateral estoppel discouraged where first motion to suppress involves charges that are relatively minor compared to charges where estoppel was argued); that the judge made comprehensive and detailed findings, amply supported in the evidence with respect to the events on which the new charges were based; and that the defendant had, and did not exercise, a right to seek interlocutory review with respect to the rulings on both the first and second motions. We conclude that the use of collateral estoppel here was not unfair, and was applied with "realism and rationality," *Ashe* v. *Swenson*, 397 U.S. 436, 444 (1970) (rule of collateral estoppel in criminal cases not to be applied with hyper-

technical and archaic approach of nineteenth century pleading book, but with realism and rationality).

*Judgments affirmed.*