## Commonwealth *vs.* Felix Rivas.

No. 09-P-136.

Essex. December 16, 2009. - July 6, 2010.

Present: Mills, Katzmann, & Fecteau, JJ.

*Controlled Substances. Evidence,* Certificate of drug analysis. *Constitutional Law,* Confrontation of witnesses, Harmless error, Search and seizure, Reasonable suspicion. *Practice, Criminal,* Confrontation of witnesses, Harmless error, Motion to suppress. *Motor Vehicle,* Inspection sticker. *Search and Seizure,* Automobile, Threshold police inquiry, Reasonable suspicion. *Threshold Police Inquiry. Mistake.*

At the trial of an indictment charging trafficking in cocaine, the admission in evidence of certificates of drug analysis, without accompanying testimony from the laboratory analyst who produced it, in violation of the defendant's constitutional right to confront witnesses against him, was not harmless beyond a reasonable doubt, where the facts in evidence independent of the certificates did not overwhelmingly prove the nature of the substances discovered by police. [211-213]

A police detective's mistaken belief that a red certificate of rejection automatically prohibited a car from being driven did not constitute a mistake of law rendering the detective's stop of the criminal defendant's vehicle unreasonable in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, where such a certificate, until corrected, provides an objective factual basis for concluding that there is or may be a defect that makes operation unlawful, and thus gave reasonable grounds for the detective's investigatory stop of the vehicle. [214-219]

Indictment found and returned in the Superior Court Department on March 23, 2005.

A pretrial motion to suppress evidence was heard by *Peter W. Agnes, Jr.,* J., and the case was tried before *Thomas P. Billings,* J.

*Leslie W. O'Brien* for the defendant.

*David F. O'Sullivan,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. This is an appeal about certificates and stickers. Having been convicted by a Superior Court jury of trafficking in cocaine with a net weight of twenty-eight grams or more in violation of G. L. c. 94C, § 32E(*b*)(2), the defendant, Felix Rivas, appeals. He argues that the admission of laboratory drug certificates violated his rights under the Sixth Amendment to the United States Constitution, requiring reversal. He also appeals from an order denying a motion to suppress, in which the motion judge concluded that a red rejection inspection sticker affixed to the defendant's vehicle supplied the police with an objectively reasonable suspicion to stop the defendant.

*Background.* A grand jury indicted the defendant on the charge of trafficking in cocaine with a net weight of twenty-eight grams or more (G. L. c. 94C, § 32E[*b*][2]), a school zone violation (G. L. c. 94C, § 32J), and possession of a false driver's license (G. L. c. 90, § 24B). The Commonwealth entered a nolle prosequi on the latter two charges. Subsequently, the defendant filed a motion to suppress all the evidence discovered after the police stopped the car he was driving, including a pouch containing cocaine. Following an evidentiary hearing, the motion judge issued a memorandum and order, allowing the motion to suppress. However, the motion judge later issued a revised memorandum and order, denying the motion to suppress.

During the ensuing trial before a different judge, certificates of drug analysis from the State crime laboratory were admitted over the defendant's objection.[1] The jury found the defendant guilty of trafficking in cocaine, and the defendant timely appealed.

*Discussion.* 1. *Certificates of drug analysis.* As a United States Supreme Court decision issued after the trial here establishes, the admission of the drug certificates, over the defendant's objection, violated the confrontation clause and was error. *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009). We apply the "harmless error" standard of review. See *Commonwealth* v. *Peixoto*, 430 Mass. 654, 660-661 (2000). See also *Commonwealth* v. *Vasquez*, 456 Mass. 350, 354-360 (2010)

---

[1]The certificates showed that the substance of one of the two bags in the pouch contained 9.1 grams of cocaine while the other contained 26.18 grams of cocaine.

(harmless error analysis applies in cases litigated before *Melendez-Diaz, supra,* was issued, even where no objection lodged in light of established precedent).

"[T]o establish harmlessness beyond a reasonable doubt, the Commonwealth must show that other properly admitted evidence of guilt is overwhelming, in the sense that it is so powerful as to nullify any effect that the improperly admitted evidence might have had on the fact finder or the findings." *Commonwealth* v. *Vasquez, supra* at 362 (internal quotations omitted).

"We consider first the probative impact of the drug certificates." *Id.* at 363. The certificates were entered into evidence through the first officer who testified, Detective Fraser. Although he had received training, arrested many people for drug crimes, and testified that he "believed" the white chalky substance was cocaine, he was never qualified as an expert to give an opinion as to the nature of the substance in question nor did he give such an opinion. Detective Fraser also testified to finding a scale and a spoon, but other than the certificates, there was no evidence as to the nature of the chalky white substance. The second testifying officer, United States Marshall McKearney, had taken "a course on recognition of street narcotics," but the trial judge sustained an objection to the question of whether he "recognized" the drugs, and Marshall McKearney only testified that he "believed" the drugs to be cocaine. State police Trooper O'Neil testified that he had substantial experience in narcotics detection. He further testified that the substance seized by Detective Fraser appeared to be high-quality drugs because of its "rock-like consistency," and that he has "had experience that people will buy cocaine at high purity and they add cutting agents to it and then they press it again until it takes on this consistency." The foundation questions qualified Trooper O'Neil to testify only as to whether the evidence was consistent with distribution, not the nature of the substance. His testimony assumed that the evidence was cocaine, relying on the certificate.

In sum, the trial judge did not make a finding that any of the officers were qualified to testify as to the nature of the substances. See *id.* at 365. Moreover, the officers "did not articulate how their expertise permitted them to identify the substances." *Commonwealth* v. *Charles,* 456 Mass. 378, 382 (2010), quoting

from *Commonwealth* v. *Melendez-Diaz*, 76 Mass. App. Ct. 229, 233 (2010). No field tests were performed, none of the witnesses was involved in generating the drug certificates, and "[n]one of the officers observed the effects of the substances on anyone ingesting them." *Commonwealth* v. *Vasquez, supra* at 364. See *Commonwealth* v. *Fluellen*, 456 Mass. 517, 527 (2010) (error not harmless because "while the jury could have inferred the identity of the substance . . . the certificates made that inference inescapable"). "This is not a case where the facts independent of the drug certificates overwhelmingly prove the nature of the substances recovered from the automobile." *Commonwealth* v. *Charles*, 456 Mass. at 384. We determine "that the certificates contributed to the jury's verdict," *Commonwealth* v. *Fluellen, supra*, and we cannot conclude that their admission was harmless beyond a reasonable doubt. See *Commonwealth* v. *Rodriguez*, 456 Mass. 578, 591-592 (2010). Accordingly, the defendant's conviction is reversed, and the case is remanded for a new trial.[2]

2. *Motion to suppress*. Although we reverse the defendant's conviction, for reasons of judicial economy we also consider his argument challenging the motion judge's ruling on the motion to suppress. We review under the familiar standard.[3]

The motion judge found the following facts. On January 31, 2005, at approximately 3:20 P.M., Detective Fraser of the Lawrence police department "was operating an unmarked Chevrolet Trailblazer in or on Berkeley Street in Lawrence." Detective Fraser, Lowell Detective Beret, and Marshall McKearney, were working together as members of the New England fugitive and high density drug unit. At this time, Detective Fraser was not actively looking for suspects. However, his routine involved stopping vehicles for any observed violations, which in about

---

[2]In light of our conclusion that the admission of the certificates was not harmless beyond a reasonable doubt as to the chemical nature of the substance, we need not consider the issue of the weight of the substance.

[3]"When reviewing the denial of a motion to suppress, we accept the judge's findings of fact and will not disturb them absent clear error. We make an independent determination as to the correctness of the judge's application of constitutional principles to the facts as found. Questions of credibility are the province of the motion judge who had the opportunity to observe the witnesses." *Commonwealth* v. *Loadholt*, 456 Mass. 411, 416 (2010) (internal citations omitted).

ten to fifteen percent of cases resulted in the confiscation of drugs or guns.

Detective Fraser observed the defendant's 1988 green sedan ahead of him in traffic with a red rejection inspection sticker on the windshield. Believing that a red rejection sticker affixed to the windshield prohibited operation of the vehicle, he activated his lights and instructed the defendant to pull over. He did not observe any other violation.

The defendant pulled over and stopped in compliance with Detective Fraser's directive. The defendant was unable to provide a valid license or registration, and was ordered to get out of the vehicle. As Detective Fraser reached inside the center console to locate the vehicle's registration (while still standing outside the vehicle), he observed a black pouch on the driver's side floor. The pouch contained a clear plastic bag containing a white, chalk-like substance. He seized the pouch and found that it contained a digital scale, a plastic spoon, and two bags of a chalk-like substance. He placed the defendant under arrest.

a. *Certificate of rejection.* The Legislature has directed the Registrar of Motor Vehicles (registrar) to "establish rules and regulations providing for a periodic staggered inspection of all motor vehicles." G. L. c. 90, § 7A, amended by St. 1997, c. 210, § 9. See 540 Code Mass. Regs. § 4.01 et seq. (1999). If it meets the requirements, the vehicle receives a "certificate of inspection." G. L. c. 90, § 7V(*a*), inserted by St. 1979, c. 761, § 4. If the vehicle fails inspection, it receives a "certificate of rejection indicating that [it] has failed the initial emissions inspection or safety inspection as required by said section seven A."[4] G. L. c. 90, § 7V(*b*). See 540 Code Mass. Regs. § 4.07(3)(a). A "Certificate of Rejection shall mean a serially numbered, adhesive sticker, device, document or symbol, as may be prescribed by the Registrar, indicating a motor vehicle or motorcycle has failed to meet the Safety and Combined Safety and Emis-

---

[4]General Laws c. 90, § 7A, requires that the regulations provide for "annual maintenance inspection to determine the proper and safe condition of the following: brakes, stop lamps, lights, directional signals, horn, vehicle identification number, steering and suspension systems, glazing, windshield wipers and cleaner, number plates, tires, fenders, bumpers, external sheet metal, reflectors, splash guards, chock blocks, safety belts and exhaust system." See 540 Code Mass. Regs. § 4.04(2)-(16) (safety inspection criteria).

sions Inspection requirements." 540 Code Mass. Regs. § 4.02. "All Certificates of Inspection or Rejection shall be . . . affixed to the motor vehicle. . . ." 540 Code Mass. Regs. § 4.07(1)(c). "A Certificate of Rejection shall entitle the owner or operator to one free re-inspection, provided that the vehicle is submitted for re-inspection at the same inspection station which issued the Certificate of Rejection within 60 calendar days . . . after the date of issue." 540 Code Mass. Regs. § 4.07(3)(c). "A Certificate of Rejection authorizes the operation of a motor vehicle for a period of 60 calendar days after inspection, . . . provided that all safety related equipment defect(s) have been corrected prior to continued operation. Safety related equipment defects are items of inspection exclusive of emissions inspection items." 540 Code Mass. Regs. § 4.07(3)(b). Thus, if the vehicle has failed a safety test as opposed to an emissions test, it may not be operated unless the safety related equipment defect has been corrected. Failure to have the vehicle reinspected within sixty days subjects the vehicle's registration to suspension. 540 Code Mass. Regs. § 4.07(4). In short, a certificate of rejection does not automatically prohibit a car from being driven; a certificate of rejection does indicate that the car may have failed a safety test and has not passed another since the failed test. 540 Code Mass. Regs. § 4.07(3)(b).

Detective Fraser testified that he pulled the defendant's car over after viewing the presence of a "red rejection sticker." He explained that "if it does receive a red rejection sticker, that motor vehicle is supposed to be repaired at that time. It's not supposed to be driven."[5] The prosecutor followed up, "At any time?" to which Detective Fraser responded, "Any time." Later, on recross examination, the officer clarified his belief of the law, recognizing that there is a sixty-day grace period "to get it repaired and get a valid inspection sticker on it."

The motion judge found that at the time of the stop, Detective Fraser mistakenly believed that a car could never be driven with a red certificate of rejection.

b. *Mistake of law.* The defendant argues that Detective Fraser's

---

[5]Detective Fraser testified that a black rejection sticker indicated that the car failed an emissions inspection, and that a red rejection sticker indicated that the car failed a safety inspection.

stop of the vehicle was premised on a mistake of law and therefore unreasonable, in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. This argument is not persuasive because there is no mistake of law here. The red rejection sticker, until corrected, provides an objective factual basis for concluding that there is or may be a defect that makes operation unlawful.

Even if the defendant's mistake of law theory were applicable or viable,[6] the instant case is distinguishable from the decisions cited by the defendant. Noting that no case in the Commonwealth has addressed this mistake of law question, the defendant cites a number of cases from other jurisdictions. In those cases, the acts forming the basis for the stop could not under any circumstances be considered illegal. See, e.g., *United States* v. *Miller*, 146 F.3d 274 (5th Cir. 1998) (stop unconstitutional where based on erroneous belief that driving through an intersection with turn signal on, without turning or changing lanes, violated the law); *United States* v. *King*, 244 F.3d 736, 740-741 (9th Cir. 2001) (stop unconstitutional where based on erroneous belief that parking placard hanging from defendant's rearview mirror violated the law); *United States* v. *Chanthasouxat*, 342 F.3d 1271, 1277-1280 (11th Cir. 2003) (stop

---

[6]The United States Court of Appeals for the First Circuit has framed the dichotomy between mistake of law and mistake of fact as follows:

"[There is a] material difference between traffic stops based on a police officer's mistake of law and those based on a police officer's mistake of fact. Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional. See, e.g., *United States* v. *McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006); *United States* v. *Chanthasouxat*, 342 F.3d 1271, 1277-80 (11th Cir. 2003). But see *United States* v. *Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) (stating that 'in mistake cases the question is simply whether the mistake, whether of law or fact, was an objectively reasonable one').

"Stops premised on mistakes of fact, however, generally have been held constitutional so long as the mistake is objectively reasonable. See, e.g., *United States* v. *Miguel*, 368 F.3d 1150, 1153 (9th Cir. 2004); *United States* v. *Cashman*, 216 F.3d 582, 587 (7th Cir. 2000). A finding of reasonable suspicion demands only an objectively reasonable appraisal of the facts — not a meticulously accurate appraisal."

*United States* v. *Coplin*, 463 F.3d 96, 101 (1st Cir. 2006) (some internal parentheticals omitted).

unconstitutional where based on erroneous belief that code required inside rearview mirrors when in fact code did not). Here, by contrast, the presence of a certificate of rejection gave the officer reasonable grounds to believe that the car was being driven illegally.

Moreover, to the extent that the defendant seeks to attack the reasonableness of the stop by reference to the police officer's subjective understanding of the law, his argument is unavailing. "[If] the facts and circumstances known to the officer are sufficient to create a reasonable suspicion . . . in a reasonable police officer, a *Terry*[7] stop is justified regardless of the officer's subjective state of mind." *Commonwealth* v. *Smigliano,* 427 Mass. 490, 493 (1998). Because we conclude that a reasonable police officer could have suspected that the defendant was driving his car illegally, see *infra,* Detective Fraser's subjective understanding is immaterial to the analysis.

*c. Reasonable suspicion.* "In order for a police investigatory stop to be justified under art. 14, the police must have 'reasonable suspicion' to conduct the stop." *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Cheek,* 413 Mass. 492, 494 (1992). "Where the police have observed a traffic violation, they are warranted in stopping a vehicle." *Commonwealth* v. *Bacon,* 381 Mass. 642, 644 (1980).[8] See Smith, Criminal Practice & Procedure § 4.131 (3d ed. 2007).

---

[7]*Terry* v. *Ohio,* 392 U.S. 1 (1968).

[8]See *Commonwealth* v. *Lantigua,* 38 Mass. App. Ct. 526, 527 (1995) (reasonable suspicion may be supported by a belief that a traffic violation has occurred, justifying the stop of a vehicle and asking to see the operator's license and registration). See also *Commonwealth* v. *Santana,* 420 Mass. 205, 209-210 (1995) (stop justified by the existence of a broken taillight, a civil infraction in violation of G. L. c. 90, § 7); *Commonwealth* v. *Baez,* 47 Mass. App. Ct. 115, 118 (1999) ("We think the standard to be used in determining the legality of a stop based on a suspected violation of [G. L.] c. 90, § 9D, is whether the officer reasonably suspected, based on his visual observations, that the tinting of the windows exceeded the permissible limits of § 9D"; a police officer reasonably suspected a violation of the civil prohibition against excessively tinted windows, justifying a stop); *Commonwealth* v. *Pacheco,* 51 Mass. App. Ct. 736, 739 (2001) (officer who observed the expired inspection sticker was justified in making a stop and requesting the defendant's license and registration); *Commonwealth* v. *Avellar,* 70 Mass. App. Ct. 608, 613 (2007) (a stop was justified by a driver's failure to signal a turn, which is a civil infraction violation of G. L. c. 90, § 14B).

Here, the motion judge found that, based on the presence of the red rejection sticker, the police officer reasonably believed that the car was being driven in violation of safety standards as set forth in G. L. c. 90, § 20.[9] Violation of G. L. c. 90, § 20, is a civil infraction. G. L. c. 90C, § 1. Detective Fraser believed that the red rejection sticker indicated that the vehicle had failed inspection for safety reasons and had not been reinspected. Though he observed no obvious safety defect as the vehicle moved through traffic, that would not have removed legitimate concern about the vehicle. Driving with any uncorrected "safety" defect — including not readily visible defects in critical safety equipment such as the frame, steering, tires, or brakes, 540 Code Mass. Regs. § 4.04(2)-(16) — would violate G. L. c. 90, § 20. While it is possible that the driver of a car with a red rejection sticker has corrected the underlying safety issues and has merely neglected to get the car reinspected, the police officer was not required to "exclude all possible innocent explanations of the facts and circumstances." *Commonwealth* v. *Deramo*, 436 Mass. 40, 44 (2002). Like the motor vehicles in *Commonwealth* v. *Santana*, 420 Mass. 205 (1995); *Commonwealth* v. *Baez*, 47 Mass. App. Ct. 115 (1999)[10] ; and *Commonwealth* v. *Avellar*, 70 Mass. App. Ct. 608 (2007), the defendant's operation of the car with a red rejection sticker gave the police officer reasonable grounds to believe that the car was being driven in current violation of the civil traffic laws. Unlike in *Commonwealth* v. *Whitehead*, 49 Mass. App. Ct. 905, 906 (2000), the police officer here based his belief on a present violation of the civil code, and not an imminent violation. See generally Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 4-3[d][4] (2010-2011). In sum, Detective Fraser had

---

[9]General Laws c. 90, § 20, amended by St. 1997, c. 210, § 12, provides, "Any person who operates and any person who owns or permits to be operated a motor vehicle . . . that fails to meet the safety standards established by the registrar pursuant to section 7A shall be punished by a fine of $25. . . ."

[10]The instant case is akin to *Commonwealth* v. *Baez*, 47 Mass. App. Ct. at 118, where until the windows were tested, the police officer could not be certain whether the window tint was legal or illegally over the line. Similarly, here, unless the information is available by computer in the police car, the officer cannot know if the sixty-day grace period has expired. Therefore, there are reasonable grounds to allow the stop in both cases.

reasonable suspicion to stop the car.[11] The motion judge properly denied the defendant's motion to suppress.[12]

The judgment is reversed, the verdict is set aside, and the case is remanded for a new trial consistent with this opinion.

*So ordered.*

---

[11]We note that, quite correctly, the defendant does not challenge here the propriety of the police officer's request for a license and registration that followed the stop, or the decision to proceed with further investigation once the defendant failed to produce a valid license. See *Commonwealth* v. *Pacheco,* 51 Mass. App. Ct. at 739. As the motion judge properly determined, "The defendant's paper license having expired, there was justification for an exit order and an arrest. An examination of the interior of the vehicle for the registration was reasonable and led to the discovery of drugs."

[12]In light of our disposition, we need not address the Commonwealth's alternative claim that the stop was justified under the "community caretaking function."