Robert Mason PARKER, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000662–DG.

Supreme Court of Kentucky.

Sept. 18, 2014.

Daniel T. Goyette, Bruce P. Hackett, Office of the Louisville Metro Public Defender, Counsel for Appellant.

Jack Conway, Attorney General, Doris-lee J. Gilbert, Special Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

On January 12, 2009, Louisville Metro Police Officer Brian Reccius observed a vehicle driven by Appellant, Robert Mason Parker, cross the center line of the road after leaving a bar. After stopping the vehicle, Officer Reccius discovered that Parker's driver's license had been suspended. Reccius asked Parker to step out

of the car. Parker complied and walked to the rear of the vehicle where he was questioned by Officer Reccius. After another officer arrived on the scene, Reccius asked Parker if there was anything illegal in his car to which Parker responded in the negative. Parker stood at the rear of the car with the other officer while Officer Reccius searched the vehicle. Parker was not handcuffed at the time. As a result of the search, the officer discovered a loaded handgun and some marijuana. Parker was then taken into custody.

Parker was subsequently indicted by a Jefferson County grand jury for possession of a hand gun by a convicted felon; illegal possession of a controlled substance, schedule I hallucinogen, marijuana; and operating a motor vehicle while license is revoked or suspended for driving under the influence, first offense. Parker filed a motion to suppress the evidence recovered from his vehicle, which was granted by the trial court. The Commonwealth filed a motion, pursuant to CR 59.05, to alter, amend, or vacate the order suppressing, or in the alternative, to enter findings of fact and conclusions of law. In an opinion and order entered on May 27, 2010, the trial court issued additional findings and denied the CR 59.05 motion.

A Court of Appeals panel unanimously reversed the circuit court's order suppressing the evidence. The court found that the Commonwealth's appeal was timely filed because "the running of the time to file an appeal of any judgment is tolled by a timely filed CR 59.05 motion." *See* CR 73.02. Regarding the suppression of the evidence, the Court of Appeals found that while the search was unlawful, the exclusionary rule did not require suppression because the police officer searching Parker's car followed existing precedent.

## Timeliness of Appeal

The Commonwealth's notice of appeal was filed on June 24, 2010, which included the suppression order entered on March 19, 2010, and the order denying the Commonwealth's CR 59.05 motion entered on May 27, 2010. Parker argues that the Commonwealth had until April 18, 2010, to file its appeal because the suppression order was inappropriate for CR 59.05 review, as it was not a final judgment under that rule. Accordingly, Parker contends that the CR 59.05 motion and the resulting judgment failed to toll the time for filing a notice of appeal and that the Commonwealth's appeal is, therefore, untimely.

■ The suppression order entered on March 19, 2010, is interlocutory, not final. KRS 22A.020(4) provides the Commonwealth with a statutory right to appeal such interlocutory orders. *See, e.g., Eaton v. Commonwealth,* 562 S.W.2d 637 (Ky. 1978) (recognizing that KRS 22A.020(4) permits an appeal of an interlocutory ruling only if the ruling "decides a matter vital to the Commonwealth's case[.]"); *Ballard v. Commonwealth,* 320 S.W.3d 69 (Ky.2010). It is therefore undisputed that suppression orders are appealable. However, suppression orders are inappropriate for CR 59.05 review.

■ CR 59.05 provides that "[a] motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment." This rule only applies to final judgments. *Pursley v. Pursley,* 242 S.W.3d 346, 347 (Ky.App. 2007); *see also* CR 54.01 ("A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding ...."). An order suppressing the Commonwealth's key evidence, such as the one at issue in the present case, may end the Commonwealth's case for all practical purposes.

However, it does not constitute an adjudication of "all rights of all of the parties" in the action, unless the trial judge dismisses the entire case for lack of probable cause or otherwise. The March 19, 2010, suppression order did not dismiss the entire case. Specifically, it appears that the driving on a suspended license charge continued and was not dependant on the suppressed evidence. As a result, the March 19, 2010, suppression order was not a final judgment and, thus, inappropriate for CR 59.05 review.

■ Our decision here does not affect proper CR 59.05 motions. To provide clarification, the time period for filing a notice of appeal is commenced upon the disposition of an appropriately filed motion that a final judgment be vacated, altered, or amended under CR 59.05. *See Bates v. Connelly,* 892 S.W.2d 586, 588 (Ky.1995) ("[A] judgment subject to a CR 59 motion cannot be final until the motion has been ruled on."). To the extent that *Commonwealth v. Cobb,* 728 S.W.2d 540 (Ky.App. 1987) and similar cases conflict, they are overruled.

■ However, resolution of the preceding issue is not dispositive. The record provides that the Commonwealth fortified its CR 59.05 motion before the trial court with an alternative request for findings of fact and conclusions of law, citing RCr. 9.78 in support. Although RCr. 9.78 requires that the court make essential findings, it is not the most appropriate device for requesting additional findings. *See* CR 52.02 ("[T]he court of its own initiative, *or on the motion of a party* ... may amend its findings or make additional findings and may amend the judgment accordingly.") (Emphasis added); *see also* RCr 13.04 ("The Rules of Civil Procedure shall be applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure."); *Vinson v. Sorrell,* 136 S.W.3d 465,

471 (Ky.2004). Accordingly, we will review the Commonwealth's motion for additional findings pursuant to RCr. 9.78 as analogous to a motion properly filed under CR 52.02.

The trial court's initial findings in the present case were limited to a handwritten note on the original suppression order, where the trial judge wrote the following:

"The Defendant's vehicle was searched solely on the basis of a search incident to arrest for driving on a suspended license and as such, is invalid under *Arizona v. Gant* [556 U.S. 332], 129 S.Ct. 1710 [173 L.Ed.2d 485] (2009) as no broad good faith exception to the exclusionary rule applies in this case."

In light of such sparse findings, the Commonwealth's motion for the trial court to enter additional findings was appropriate and, in fact, critical for appellate review.

CR 73.02(1)(e) provides that the running of the time for appeal is terminated by a timely motion pursuant to CR 52.02.' CR 73.02(*l*)(e) applies in criminal cases under RCr 12.02. As previously stated, the Commonwealth's motion for findings pursuant to RCr. 9.78 is treated as a CR 52.02 motion, thus tolling the appeal period provided by CR 73.02(*l*)(e). A contrary determination would not only violate the civil rules made applicable in criminal proceedings, it would also create dueling jurisdictions—an absurd and untenable result. The Court of Appeals correctly noted that it is impossible for an appellate court to obtain jurisdiction over a judgment which is still pending further review in a lower court.

Moreover, we encourage a well-developed trial court record in all cases to the extent practical. An appeal by the Commonwealth of the original interlocutory suppression order in this case would have provided the Court of Appeals with an inadequate record. Neither justice nor

the judicial economy would have been well-served as a result. Accordingly, we hold that the Commonwealth's notice of appeal was timely filed. We now turn to the merits of the case.

### Suppression of the Evidence

In support of his argument, Parker offers a very thorough and intriguing analysis of the evolution of Kentucky's search and seizure jurisprudence. However, our decision in the present case turns on what the law was on the date of the search and whether the police officer conducting the search was objectively reasonable in his reliance on the law at that time.

The search at issue occurred on January 12, 2009. As of that date, the U.S. Supreme Court's ruling in *New York v. Belton* was the law of the land. 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* permitted law enforcement officers to search a vehicle incident to the arrest of the occupant, without probable cause and even if the occupant could not gain access to the vehicle at the time of search. *Id.; see also Henry v. Commonwealth,* 275 S.W.3d 194 (Ky.2008) (holding that a search of defendant's vehicle was a valid search incident to defendant's arrest, even though defendant was secured in the back of a police cruiser at the time of the search). Thus, at the time it was conducted, the search in the present case was lawful under *Belton* and *Henry*.

Although *Henry* became final only four days prior to the search in the present case, *Belton* had been in effect since 1981. However, in *Clark v. Commonwealth,* the Court of Appeals held that *Belton* did not apply where the arrest was for a traffic violation and the arrestee was secured in the police cruiser prior to the search. 868 S.W.2d 101 (Ky.App.1993). Yet, *Clark* was an outlier and did not comport with binding decisions from this Court that were in effect at the time of the search in the present case. *See Penman v. Commonwealth,* 194 S.W.3d 237 (Ky.2006); *Rainey v. Commonwealth,* 197 S.W.3d 89 (Ky.2006). To the extent that there was any conflict based on Kentucky Constitutional provisions, it arose from *Clark*. Nevertheless, *Clark* was disavowed prior to *Henry* and does not instruct our decision in the present case.

On April, 21, 2009, the U.S. Supreme Court decided *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In overruling *Belton, Gant* held that a vehicle search, incident to arrest, is only authorized "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 343, 129 S.Ct. 1710 (citation omitted). *Gant* is the current U.S. Supreme Court precedent applicable to automobile searches and was officially recognized in *Rose v. Commonwealth,* 322 S.W.3d 76 (Ky.2010). The Commonwealth concedes that the search in the present case was unconstitutional under *Gant* and thus, *Rose.*

Also, the Commonwealth does not contest that *Gant* applies retroactively pursuant to the U.S. Supreme Court's decision in *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). However, the Commonwealth argues that the evidence recovered by the contested search should not be suppressed because of the police officer's reasonable and good-faith reliance on *Belton* at the time of Parker's arrest. In support, the Commonwealth leans heavily on *Davis v. United States,* which held that the good-faith exception to the exclusionary rule allows for the admission of evidence obtained as a result of an objectively reasonable reliance on "binding appellate precedent." ——

U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). The dissonance between *Gant*, *Griffith*, and *Davis*, paints the law in shades of gray where blackletter is desperately needed. To provide clarity, it is first necessary to present a brief foundation.

### The Exclusionary Rule and its Exceptions

Both our state and federal constitutions provide a bill of rights, yet offer no bill of remedies when those rights are abridged. *See* Kentucky Const. § 10; U.S. Const. Amendment IV. In order to resolve this textual divide, courts have long since held that unlawfully obtained evidence and the fruits resulting therefrom are inadmissible in criminal proceedings. This axiomatic principle is known as the exclusionary rule. The U.S. Supreme Court established this rule in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) and extended it to state court proceedings in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, Kentucky was a pioneer, applying the exclusionary rule long before it was mandated by our nation's highest court. *See Youman v. Commonwealth*, 189 Ky. 152, 224 S.W. 860 (1920) (applying the exclusionary rule for the first time in Kentucky). Yet, since its inception, the exclusionary rule has been tempered with exceptions.

In *United States v. Leon*, the U.S. Supreme Court first adopted a good-faith exception to the exclusionary rule, holding that the rule does not apply when law enforcement officers conduct a search in "objectively reasonable reliance" on a warrant later held invalid. 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Since *Leon*, the U.S. Supreme Court has recognized additional exceptions. *See Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (holding that "evidence obtained by an officer acting in objectively reasonable reliance on a statute" need not be suppressed when statute is later determined to be unconstitutional); *Arizona v. Evans*, 514 U.S. 1, 16–17, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); *Herring v. United States*, 555 U.S. 135, 146, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). Most germane to the present case is the recent expansion of the good-faith exception to the exclusionary rule announced in *Davis*.

*Davis* involved a vehicle search, incident to arrest, which produced a revolver. *Davis*, 131 S.Ct. at 2425. As a result of the search, the defendant, Davis, was indicted on one count of possession of a firearm by a convicted felon. *Id.* at 2425–26. The search in that case complied with *Belton*, which was the law at that time. *Id.* at 2426. Accordingly, the District Court refused to suppress the revolver as evidence and Davis was convicted on the firearm charge. *Id.* While Davis' case was on appeal, the U.S. Supreme Court decided *Gant*. Relying on *Gant*, the U.S. Court of Appeals for the Eleventh Circuit held that the search violated Davis' rights but did not require suppression of the evidence. *Davis*, 131 S.Ct. at 2426.

On appeal to the U.S. Supreme Court, the Court affirmed the judgment of the Eleventh Circuit and held that, "when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." *Id.* at 2434. In so holding, the Court noted that the searching officers "acted in strict compliance with binding precedent," which, at that time, was *Belton*. *Davis*, 131 S.Ct. at 2428. The Court concluded that exclusion of the evidence in that instance would only serve to deter "conscientious police work." *Id.* at 2429.

### Applying Davis in Kentucky

This Court is charged with protecting the rights afforded by the Fourth Amendment to the U.S. Constitution and the U.S. Supreme Court's ever-evolving

interpretation thereof. However, states are not required to apply the numerous exceptions to the exclusionary rule. Accordingly, some recognize a good-faith exception, but not in every instance adopted by the U.S. Supreme Court. *People v. Krueger,* 175 Ill.2d 60, 221 Ill.Dec. 409, 675 N.E.2d 604 (1996). Other states reject the good-faith exception entirely. *E.g., State v. Gutierrez,* 116 N.M. 431, 863 P.2d 1052, 1053 (1993); *State v. Oakes,* 157 Vt. 171, 598 A.2d 119 (1991); *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991).

■ In Kentucky, we have consistently interpreted Section 10 of our state Constitution in congruence with the Fourth Amendment regarding the application of both rights and remedies. The present case provides no imperative for departure. *See, e.g., Dunn v. Commonwealth,* 360 S.W.3d 751, 758 (Ky.2012) ("this Court has consistently held that the protections of Section 10 of the Kentucky Constitution are no greater than those of the federal Fourth Amendment."); *Williams v. Commonwealth,* 364 S.W.3d 65, 68 (Ky.2011). Therefore, although we recognize that *Davis* controls in this instance, we narrowly define and apply its holding as follows: when law enforcement officers conduct a search in objectively reasonable reliance on clearly established precedent from this Court or the United States Supreme Court, the exclusionary rule does not apply to exclude the admission of evidence obtained as a result of the search.

By narrowly defining the holding in *Davis,* we seek to avoid confusion regarding what law controls and, thus, when courts should apply the exclusionary rule. Moreover, our decision adequately preserves the protections provided by our state and federal constitutions while not penalizing police officers for performing their duties conscientiously and in good-faith.

Law enforcement officers are the vanguard of our legal system. They operate in real time without the benefit of judicial hindsight and must rely on their training and experience. Here, Officer Reccius testified that the search of Parker's vehicle complied with the training he received prior to the search and that this type of search was common practice in his police department at that time. Reccius further testified that since the contested search in this case, he was informed by the Louisville Metro Police Department's legal division and his superiors that automobile searches must now comply with *Gant.* This is exactly the type of diligence and prudent instruction that should be encouraged.

However, our decision here does not condone erroneous policies and procedures or compel judicial enforcement of an officer's mistake of law. *See, e.g., Commonwealth v. Miller,* 78 Mass.App.Ct. 860, 944 N.E.2d 179, 183 (2011) (requiring suppression of evidence obtained as a result of a vehicle search conducted where "the trooper based his stop on the entirely erroneous belief that the stripe on the defendant's license plate violated [state law] …"); *Commonwealth v. Rivas,* 77 Mass.App.Ct. 210, 929 N.E.2d 328, 333 n. 6 (2010) (vehicle stops premised on police officer's mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional); *United States v. Chanthasouxat,* 342 F.3d 1271, 1280 (11th Cir.2003); *United States v. McDonald,* 453 F.3d 958, 961–62 (7th Cir.2006).

Furthermore, Parker devotes a significant segment of his brief seeking to revive an argument previously rejected by this Court in *Henry*—that there exists "an independent Kentucky tradition of excluding tainted evidence not simply to deter police misconduct but more broadly to ensure that courts do not become implicated in constitutional violations." *Henry,* 275

S.W.3d at 199 (overruled) (citing *Youman,* 224 S.W. at 866). Parker's reliance on *Youman* is misguided.

■ In *Youman,* the Court held that police officers' warrantless search of the defendant's home was deliberate and flagrant, thus requiring suppression of the illegally obtained evidence. *Id.* As such, the result in *Youman* remains sound under its clearly distinguishable facts, and indeed, is enduring evidence that the purpose of the exclusionary rule is to deter police misconduct. *See also Crayton v. Commonwealth,* 846 S.W.2d 684, 688 (Ky. 1992) ("deterrence of police misconduct is the primary, if not the only, legitimate objective of evidentiary suppression."); *Davis,* 131 S.Ct. at 2426 ("The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations.") (citations omitted). Thus, *Youman* is incongruous with our modern search and seizure jurisprudence to the extent that it is interpreted as establishing a broad Kentucky tradition of applying the exclusionary rule for purposes other than police deterrence.

■ Lastly, we stress that when interpreting our own Kentucky Constitution, this Court is not tethered to the decisions of the U.S. Supreme Court or the reasoning upon which those decisions are founded. Although the weight of our modern search and seizure precedent comports with federal law, we are not beholden to interpreting every provision of the Kentucky Constitution as identical to its analogous federal counterpart.

We hold the search in the present case was conducted by Officer Reccius in an objectively reasonable reliance on clearly established precedent provided under *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) and *Henry v. Commonwealth,* 275 S.W.3d 194 (Ky.2008). Accordingly, the exclusionary rule does not apply to exclude the contraband discovered in Parker's vehicle.

### Conclusion

For the foregoing reasons, we hereby affirm the Court of Appeals' decision vacating the Jefferson Circuit Court's order suppressing the evidence discovered in Parker's vehicle.

All sitting. MINTON, C.J.; KELLER, NOBLE, SCOTT, and VENTERS, JJ., concur. ABRAMSON, J., concurs in result only.