NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-254                                      Appeals Court

COMMONWEALTH  vs.  JUAN G. SURIEL.

No. 16-P-254.

Hampden.     March 1, 2017. - May 26, 2017.

Present: Green, Wolohojian, & Sullivan, JJ.

Firearms. Practice, Criminal, Motion to suppress.
    Constitutional Law, Search and seizure, Reasonable
    suspicion. Search and Seizure, Automobile, Reasonable
    suspicion.

Complaint received and sworn to in the Springfield Division
of the District Court Department on December 2, 2013.

A pretrial motion to suppress evidence was heard by Robert
A. Gordon, J., and the case was tried before Charles W. Groce,
III, J.

William M. Driscoll for the defendant.
Kelsey A. Baran, Assistant District Attorney, for the
Commonwealth.

SULLIVAN, J. The defendant, Juan G. Suriel, appeals from

his convictions of possession of a firearm without a license in

violation of G. L. c. 269, § 10(a), and possession of ammunition

without a firearm identification card in violation of G. L.

c. 269, § 10(h)(1).[1]  He contends that his motion to suppress
should have been allowed because the police lacked reasonable
suspicion to conduct an investigatory stop.  We affirm.

Background.  We recite the motion judge's factual findings,
supplemented by uncontroverted evidence in the record that is
consistent with those findings.  See Commonwealth v. Edwards,
476 Mass. 341, 342 (2017).  On November 30, 2013, at about 5:30
P.M., a police officer from the narcotics division of the
Springfield police department was surveilling a local
barbershop.  The narcotics officer was parked across the street
from the barbershop, in the parking lot of Springfield Technical
Community College on State Street.  At around 6:20 P.M., the
narcotics officer saw two men go into the barbershop.  A short
time later, another man, later identified as codefendant Glidden
Gotay, went into the barbershop holding a blue bag.  The three
men were talking by the front door and a fourth man, later
identified as the defendant, joined the conversation.  The men
then went into a back area of the barbershop, out of sight of
the narcotics officer.  Within a short period of time, the four
men came out of the barbershop, walked about ten to fifteen feet

---

[1] A third charge of receiving stolen property over the value
of $250 in violation of G. L. c. 266, § 60, was nolle prossed.

down the driveway next to the barbershop, and began to talk.[2]

Another man, later identified as codefendant Jose L. Vicente,

remained at the head of the driveway near the street and

sidewalk.  The narcotics officer then saw Gotay hand a gun to

one of the two men, who handed it back to Gotay.  Gotay next

handed the gun to the defendant.  The defendant then put the gun

inside his jacket.  The entire transaction took a matter of

seconds.

The men then went their separate ways in separate cars.

The defendant drove away in a car (a Saturn), operated by

Vicente.  While observing the meet-up, the narcotics officer had

given support officers a running description of what he saw,

including the make, model, color, and license plate of the

Saturn.

When support officers spotted the Saturn, they pulled in

front of it, positioning the unmarked cruiser so that the Saturn

had to stop.  When one of the support officers approached the

Saturn, he noticed the defendant "looking down to his right, and

gesturing feverishly to the right side of his seat with his

arm."  That officer shouted for the defendant to show his hands.

The defendant made eye contact with the officer, while still

reaching down to the right side.  The support officer continued

---

[2] The area was lit by street lamps and lights from the barbershop.

to approach the Saturn and, with the help of another support officer, "extracted" the defendant from the car.  A search of the Saturn revealed a .22 caliber Smith & Wesson firearm in the passenger side compartment and a magazine on the passenger side floorboard.

Discussion.  Motion to suppress.  "In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error "but conduct an independent review of [the judge's] ultimate findings and conclusions of law."'"  Commonwealth v. Jessup, 471 Mass. 121, 129 (2015), quoting from Commonwealth v. Scott, 440 Mass. 642, 646 (2004).

The stop.  A stop of a motor vehicle is justified if "the police [have] a reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the . . . [car] had committed, was committing, or was about to commit a crime."  Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996).  "An officer's suspicion must be grounded in '"specific, articulable facts and reasonable inferences [drawn] therefrom" rather than on a "hunch."'"  Edwards, 476 Mass. at 345, quoting from Commonwealth v. Lyons, 409 Mass. 16, 19 (1990).  Here, a stop in the constitutional sense occurred when the police car pulled in front of the Saturn and stopped it.  See Edwards, 476 Mass. at 345.

The defendant contends that the police lacked reasonable suspicion to stop the Saturn based on the surveillance information relayed by the narcotics officer.  He points out that there is no evidence in the record to suggest that the location was known to police for illegal gun sales.  There was no explanation of the reasons for the surveillance.  Similarly, none of the men involved were known to the police.  The defendant further contends that the fact that the gun was transferred to the defendant by another does not give rise to reasonable suspicion, because ownership of a gun is not in and of itself illegal.  See Alvarado, supra at 269 ("Carrying a gun is not a crime.  Carrying a firearm without a license [or other authorization] is").  "The mere possession of a handgun [is] not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying that gun."  Commonwealth v. Couture, 407 Mass. 178, 183 (1990).

As in Edwards, however, there is more to this case than mere possession of a gun.[3]  Here there was a transfer of a gun.  The timing of the men's arrival permitted the narcotics officer to infer that the men met by prearrangement.  None of the men stayed to get a haircut or for any other reason unrelated to

_____

[3] "[W]hen . . . police observations are coupled with other factors, there may be reasonable suspicion of a crime.  Commonwealth v. DePeiza, 449 Mass. 367, 373 (2007).  See Edwards, 476 Mass. at 346-347.

this transaction. After speaking briefly at the back of the barbershop, they left and walked together down a nearby driveway, which was sheltered from view. One man stayed at the head of the driveway. The narcotics officer could infer that he served as a lookout. A gun was passed from hand to hand in a matter of seconds and pocketed, followed by a prompt departure by all of the men.

The circumstances of the transfer of the gun give rise to reasonable suspicion, not a mere hunch. The participants chose to leave the barbershop, where what they were doing could be witnessed, and to move outside to a secluded area. They hastily transferred the gun and left immediately. "[T]he officer 'could reasonably infer from the conjunction of these facts that criminal activity might be afoot.'" Edwards, supra at 347, quoting from Commonwealth v. Thompson, 427 Mass. 729, 734, cert. denied, 525 U.S. 1008 (1998).

The location of the transaction also matters. In this case, the transfer occurred in a driveway in the early evening, not in a building housing a business dedicated to the sale, rental, or lease of firearms during customary business hours.[4]

---

[4] A person who intends "to sell, rent or lease firearms, rifles, shotguns or machine guns, or to be in business as a gunsmith" must have a license to do so. G. L. c. 140, § 122, as amended by St. 1957, c. 688, § 5. "Every license shall specify the street and number of the building where the business is to be carried on, and the license shall not protect a licensee who

There was reason to suspect that this was not a lawful commercial sale.

The defendant points out that not all sales or transfers must be made by a licensed gun dealer, relying on G. L. c. 140, § 128A.[5] This is undoubtedly true, but the fact that the transfer might have been lawful does not mean that the officers lacked reasonable suspicion that it was not. See Commonwealth v. Rivas, 77 Mass. App. Ct. 210, 218 (2010), quoting from Commonwealth v. Deramo, 436 Mass. 40, 44 (2002) ("[T]he police

carries on his business in any other place." G. L. c. 140, § 122, as amended through St. 1998, c. 180, § 10.

[5] As is pertinent here, and as in effect at the time, that statute permitted an individual who is not a licensed gun dealer to sell or transfer up to four firearms in a calendar year, provided that (1) the seller has a firearm identification card, a license to carry firearms, or is otherwise exempted or authorized by the statute, and (2) the purchaser has a permit to purchase and a firearm identification card, license to carry firearms, or is an exempt person, as defined in the statute. G. L. c. 140, § 128A. In addition, "[a]ny sale or transfer" pursuant to § 128A, must comply the provisions of G. L. c. 140, § 131E. G. L. c. 140, § 128A, inserted by St. 2014, c. 284, § 29. The requirements of § 131E are strict. A firearm may be purchased "only upon presentment of: (i) a valid Class A or Class B license to carry firearms issued under section 131; or (ii) a valid firearm identification card issued under section 129B together with a valid permit to purchase a firearm issued under section 131A; or (iii) a valid permit to purchase a firearm issued under section 131A together with valid proof of exempt status under section 129C." G. L. c. 140, § 131E, as amended through St. 1998, c. 180, § 45. There was nothing in the brief encounter in the driveway that suggested that any of the statutory requisites had been met. From what the narcotics officer could observe, the transfer of a gun was made without any presentment of proof of licensure, authorization, or exempt status.

officer was not required to 'exclude all possible innocent explanations of the facts and circumstances'").  Reasonable suspicion does not mean absolute certitude; it means facts that would cause an officer to draw the reasonable inference that unlawful activity was taking place.  See Edwards, 476 Mass. at 347.  Those facts were present here.

Considering all of the surrounding circumstances, the officers had reasonable suspicion to believe that the defendant was "participating in a gun [transaction] . . . [and] that the [transaction] was unlawful."  Commonwealth v. Rupp, 57 Mass. App. Ct. 377, 382 (2003).[6]

Judgments affirmed.

---

[6] In light of our disposition, we do not address the defendant's argument that the judge erred in denying his motion for directed verdict because the evidence should have been suppressed.  However, "we note that the constitutional sufficiency of the evidence under Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), is to be measured upon that which was admitted in evidence without regard to the propriety of the admission."  Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010).