JONES, COMMONWEALTH vs., 100 Mass. App. Ct. 600

 
 COMMONWEALTH vs. DESMOND F. JONES.

100 Mass. App. Ct. 600
 October 8, 2021 - January 7, 2022

Court Below: District Court, Brockton Division
Present: Massing, Lemire, & Hand, JJ.

 

Motor Vehicle, Operating under the influence, Inspection sticker. Alcoholic Liquors, Motor vehicle. Registrar of Motor Vehicles. Practice, Criminal, Interlocutory appeal, Motion to suppress, Traffic violation.

A District Court judge erred in denying a criminal defendant's pretrial motion to suppress evidence of his intoxication when the vehicle he was driving was stopped by police based on the absence of an inspection sticker, where the police lacked reasonable suspicion to justify the stop, given that information that would have corrected the troopers' good faith, but incorrect, belief that the car could not be operated lawfully without an inspection sticker (i.e., the automobile's registration would have shown that the car was still within the grace period for inspection under 540 Code Mass. Regs. § 4.07[1][a]) was available to them in their cruiser before they initiated the stop. [603-606]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on November 20, 2017. 

 A pretrial motion to suppress evidence was heard by Daniel E. Dilorati, J.

 An application for leave to prosecute an interlocutory appeal was allowed by Barbara A. Lenk, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. 

 Joshua Grammel, Committee for Public Counsel Services, for the defendant.

 Audrey Anderson, Assistant District Attorney, for the Commonwealth.

 HAND, J. The defendant is charged with operating a motor vehicle while under the influence of intoxicating liquor (OUI), G. L. c. 90, § 24. In this interlocutory appeal, [Note 1] he challenges the denial of his motion to suppress evidence of his intoxication obtained after State police troopers stopped the car that he was 

 Page 601 

driving based on the absence of an inspection sticker. The question here is whether the troopers had reasonable suspicion to justify stopping the defendant for committing a civil motor vehicle infraction based on their good faith, but incorrect, belief that the car could not be operated lawfully without an inspection sticker. We conclude that the stop was unlawful because information that would have corrected the troopers' mistake was available to them in their cruiser before they initiated the stop. Accordingly, we reverse the order denying the defendant's motion to suppress.

 Background. Massachusetts law requires motor vehicles to undergo annual safety inspections according to rules and regulations established by the Registrar of Motor Vehicles; the results of the mandatory inspection are displayed on a certificate, commonly referred to as an "inspection sticker," affixed to the vehicle's windshield. [Note 2] See G. L. c. 90, § 7A; 540 Code Mass. Regs. § 4.03(1) (2008). The regulations require an initial inspection after a vehicle is registered, and mandate subsequent annual inspections on or before the expiration of the vehicle's existing certificate. See 540 Code Mass. Regs. § 4.03(1)(a) & (b).

 As to the initial inspection, the regulations require "[e]very owner or person in control of a motor vehicle which is newly acquired in the Commonwealth [to] submit such motor vehicle for a required inspection within seven days of the date on which the motor vehicle is registered to said owner in the Commonwealth." 540 Code Mass. Regs. § 4.03(1)(a). The regulations thus establish a seven-day grace period for inspecting newly purchased, newly registered vehicles, see id.; it follows that such vehicles may be operated without an inspection certificate within that seven-day window.

 Facts. "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given . . . [to] testimony presented at the motion hearing. . . . We review independently the application of constitutional principles to the facts found." Commonwealth v. Cordero, 477 Mass. 237, 241 (2017), quoting Commonwealth v. Amado, 474 Mass. 147, 151 (2016). "We summarize the facts as found by the motion judge," Commonwealth v. Evelyn, 485 Mass. 691,

 Page 602 

 693 (2020), "supplemented by evidence in the record that is uncontroverted and that was implicitly credited by the judge." Commonwealth v. Warren, 475 Mass. 530, 531 (2016).

 On the evening of November 18, 2017, Trooper Andrew DaSilva and Trooper Jason Trout were in Brockton in a marked police cruiser when they saw the defendant driving a vehicle that did not have an inspection sticker on its windshield. Trooper DaSilva, who was driving, activated the cruiser's blue lights to signal the driver to stop.

 In the meantime, Trooper Trout, in the passenger's seat of the cruiser, queried the car's license plate number on the cruiser's mobile data terminal (MDT). The judge found that in conducting this search, Trooper Trout accessed information through the MDT about "the car's registration, insurance status, [and] whether the car was stolen or had attached plates."

 The troopers stopped the defendant's car based on Trooper Trout's belief that the defendant was operating illegally because the car did not have an inspection sticker in the window. [Note 3] See Commonwealth v. Privette, 100 Mass. App. Ct. 222, 227-228 (2021) (knowledge of one officer involved in responding to crime imputed to different officer cooperating in same response); Commonwealth v. Shane S., 92 Mass. App. Ct. 314, 322 n.11 (2017) ("Our courts have routinely imputed a police officer's knowledge of certain facts to other officers engaged in a joint enterprise when determining questions of reasonable suspicion or probable cause"). Trooper Trout approached the vehicle and spoke to the defendant. The trooper smelled the odor of an alcoholic beverage on the defendant's breath and noticed a partially full container of beer in the car. After investigating further, the troopers arrested the defendant for OUI. The judge found that "later, presumably after the stop," Trooper Trout used the MDT to obtain additional information about the defendant's vehicle, including the fact that "the defendant's car had been properly registered" no more than seven days earlier. [Note 4], [Note 5]

 Discussion. It is well settled that "[w]here the police have observed a traffic violation, they are warranted in stopping a vehicle." Commonwealth v. Rivas, 77 Mass. App. Ct. 210, 217 (2010), quoting Commonwealth v. Bacon, 381 Mass. 642, 644 (1980). It is also true, however, that "[a] police stop of a moving automobile constitutes a seizure, and therefore, any such stop, whatever its purpose, must comply with the Fourth Amendment to the United States Constitution and with art. 14 of the Massachusetts Declaration of Rights." Commonwealth v. Rodriguez, 472 Mass. 767, 773 (2015). "In order for a police investigatory stop to be justified under art. 14, the police must have 'reasonable suspicion' to conduct the stop." Rivas, supra, quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004). See Commonwealth v. Buckley, 478 Mass. 861, 865 (2018) ("[a] police stop of a moving automobile . . . must be reasonable in order to be valid under the Fourth Amendment and art. 14" [quotation and citation omitted]).

 Our assessment of the reasonableness of the troopers' suspicion in this case is guided by our decision in Rivas. Like this case, Rivas involved a motor vehicle stop based on police concerns about a vehicle's compliance with the rules and regulations concerning motor vehicle safety inspections. See Rivas, 77 Mass. App. Ct. at 214. In that case, the police saw the defendant driving a car with a red rejection sticker. See id. Under the regulations governing vehicle inspections, a red rejection sticker signified an inspection failure based on a safety defect. See id. at 215 & n.5. The regulations provided the vehicle owner with "a period of [sixty] calendar days after [the failed] inspection" to remedy the defect and have the vehicle reinspected. Id. at 215, quoting 540 Code Mass. Regs. § 4.07(3)(b) (1999). [Note 6] A vehicle with a red rejection sticker could be driven during the sixty calendar days only if "all safety related equipment defect(s) [had] been corrected

 Page 604 

 prior to continued operation." Id., quoting 540 Code Mass. Regs. § 4.07(3)(b). Thus, under the regulations, "a certificate of rejection does not automatically prohibit a car from being driven; a certificate of rejection does indicate that the car may have failed a safety test and has not passed another since the failed test." Id., citing 540 Code Mass. Regs. § 4.07(3)(b).

 In Rivas, we concluded that on those facts, where the police could not have known whether the safety defects precipitating the vehicle's rejection had been remedied, the police had reasonable suspicion to stop the defendant's vehicle. Rivas, 77 Mass. App. Ct. at 218. We reasoned that "[w]hile it is possible that the driver of a car with a red rejection sticker has corrected the underlying safety issues and has merely neglected to get the car reinspected, the police officer was not required to 'exclude all possible innocent explanations of the facts and circumstances.'" Id., quoting Commonwealth v. Deramo, 436 Mass. 40, 44 (2002). We analogized the facts of the case to those in Commonwealth v. Baez, 47 Mass. App. Ct. 115 (1999). There, a trooper familiar with the law concerning tinted windows, and who had with him a tool that "measure[d] levels of transparency," stopped a vehicle based on his assessment, from his observation with the naked eye, that its window tint was unlawful. See id. at 118. We held that although the trooper did not know conclusively whether the tint was proper until he measured it, his observation provided reasonable suspicion to stop the car to allow himself an opportunity to determine whether the car was being operated legally. See Rivas, supra at 218 n.10, citing Baez, supra.

 Critical to our conclusion that the traffic stops in both Rivas and Baez were justified, however, was the fact that the police not only did not know whether the defendant was operating lawfully or unlawfully, but that they could not have known that information without stopping the car. See Rivas, 77 Mass. App. Ct. at 218 n.10, citing Baez, 47 Mass. App. Ct. at 118. As we said in Rivas, "[U]nless the information is available by computer in the police car, the officer cannot know if the sixty-day grace period has expired. Therefore, there are reasonable grounds to allow the stop in both [Rivas and Baez]." (Emphasis added.) Rivas, supra.

 The facts of the case before us now present precisely the situation we identified in that caveat in Rivas -- the troopers did have "available by computer in the police car" the information about the defendant's automobile registration that would have shown that the car was still within the grace period for inspection 

 Page 605 

under the regulations. [Note 7] See 540 Code Mass. Regs. § 4.07(1)(a) (2008). Contrast Rivas, 77 Mass. App. Ct. at 218 n.10. Accordingly, we conclude that whether the troopers' suspicion was reasonable in this case depended on all of the information reasonably available to them through the MDT in the cruiser before the stop, including information about the vehicle's registration and inspection status. To the extent that the troopers overlooked information that was reasonably available to them and which would have dispelled their initial suspicion that the car was being operated unlawfully, they acted unreasonably.

 We also consider the reasoning in Commonwealth v. Maingrette, 86 Mass. App. Ct. 691 (2014). In that case, the Commonwealth appealed the allowance of the defendant's motion to suppress evidence obtained after the police stopped and arrested him on a default warrant. See id. at 691-692. After the arrest, the police found a warrant recall document in the defendant's possession. See id. at 693. In allowing the motion, the judge found that although the police could have used the warrant management system (WMS) information available to them in their cruisers before the arrest to determine that the warrant had been recalled, they had not done so, instead relying on the warrant information obtained several hours earlier. [Note 8] See id. at 694. In reviewing the judge's decision, we relied on a number of cases, including Commonwealth v. Hecox, 35 Mass. App. Ct. 277, 284 (1993) ("[T]he police may not rely upon . . . incomplete information when they are at fault in . . . not informing themselves" [quotation and citation omitted]). Maingrette, supra at 695. We concluded that the police had the time and opportunity to check the WMS to confirm that the arrest warrant was still active, and affirmed the suppression order. Id. at 700.

 The same reasoning applies here. The judge's finding that the troopers were acting mistakenly, but in good faith, when they stopped the car does not remedy the constitutional defects in the stop. "Stops premised on a mistake of law, even a reasonable,

 Page 606 

 good-faith mistake, are generally held to be unconstitutional." Commonwealth v. Bernard, 84 Mass. App. Ct. 771, 773 n.2 (2014), quoting Rivas, 77 Mass. App. Ct. at 216 n.6. [Note 9] We discern no reason to depart from that rule here. See Commonwealth v. Porter P., 456 Mass. 254, 267-269 (2010) (search invalid where officer misunderstood law and incorrectly determined that homeless shelter director could consent to search of juvenile's room); Commonwealth v. Miller, 78 Mass. App. Ct. 860, 866 (2011) (requiring suppression of evidence obtained as result of stop based on mistake of law); Commonwealth v. Censullo, 40 Mass. App. Ct. 65, 65-66, 69-70 (1996) (evidence suppressed where stop of defendant was based on officer's own mistaken belief that street was one-way and that defendant was traveling wrong way on it, but street was legally two-way street).

Order denying motion to suppress reversed.

FOOTNOTES
[Note 1] A single justice of the Supreme Judicial Court granted the defendant leave to pursue this appeal. 

[Note 2] The regulations provide for several categories of certificates, depending upon whether a given vehicle has passed or failed inspection, or had the inspection waived. 540 Code Mass. Regs. § 4.02 (2008). 

[Note 3] We understand the judge to have found that the trooper made the mistake in good faith. 

[Note 4] According to an MDT record introduced at the hearing, the "effective date" of the vehicle's registration was November 16, 2017, two days before the stop. The judge did not make a more explicit finding about the timing of Trooper Trout's return to the information on the MDT. Where the judge found that the trooper used the terminal in the cruiser to obtain this information, we understand that he did so before the defendant was transported from the location of the stop. 

[Note 5] The defendant claims error in certain of the judge's more detailed findings about how the information was presented through the MDT and what steps Trooper Trout was obligated to follow to access the information. As nothing in our analysis turns on the disputed facts, we need not resolve the issue. Likewise, although there was evidence that Trooper Trout first accessed the MDT to query the defendant's license plates at 7:42 P.M. and that State police records documented the time of the stop as 8:01 P.M., the precision of those times is not significant to our decision. The Commonwealth does not argue that the troopers' ability to access any of the information ultimately available through the MDT was limited by the speed at which the events here unfolded. 

[Note 6] The quoted text of the regulation was the same in 1999 and 2008. 

[Note 7] The Commonwealth's suggestion that the troopers did not have access to the date of the defendant's registration -- an argument based on Trooper Trout's testimony to the effect that there were sometimes delays in the MDT computer system -- is speculative. Nothing in the record indicates that the information about the defendant's registration was delayed in this situation, or that the information at issue was not available to the troopers before the stop. 

[Note 8] In Maingrette, a department policy was admitted in evidence; it called for a check of WMS "[i]mmediately prior to arresting a person for an outstanding warrant." Maingrette, 86 Mass. App. Ct. at 694. 

[Note 9] The Commonwealth does not argue that the principle stated in Bernard and Rivas needs to be revisited in light of Heien v. North Carolina, 574 U.S. 54, 60-61 (2014) (noting Fourth Amendment does not invalidate reasonable suspicion based on "reasonable" mistakes of law or fact on part of police). Cf. Commonwealth v. Dyette, 87 Mass. App. Ct. 548, 556 n.11 (2015) (treating as open question whether "mistake of law vitiates reasonable suspicion under Massachusetts law"). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.